573 P.2d 907

James P. LARSEN and Donald C. Jacobs, Appellants,

v.

MOTOR SUPPLY COMPANY, an Arizona Corporation, Craig Stevenson and Suzanne Stevenson, husband and wife, Wesley Shilatow and Gloria Shilatow, husband and wife, Appellees.

No. 1 CA–CIV 3468.

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 17, 1977.

Rehearing Denied Dec. 13, 1977.

Review Denied Jan. 17, 1978.

Boettcher, Crowder & Schoolitz, by Harry Schoolitz, Jr., Paul J. Crowder, Jr., Scottsdale, for appellants.

Fennemore, Craig, von Ammon & Udall, P. C., by Michael Preston Green, George T. Cole, Phoenix, for appellees.

## OPINION

EUBANK, Judge.

This appeal deals with an employer's right to discharge employees working under employment contracts of indefinite duration.

The appellants, James P. Larsen and Donald C. Jacobs, were employed by the appellee, Motor Supply Company, for several years. Neither appellant had a written employment contract; both understood that their employment was terminable at will. In May of 1974, Motor Supply Company announced a new policy of requiring all employees to submit to a "psychological stress evaluation test." This test was similar to a lie detector test, and was performed by analyzing voice recordings of the person being tested. By noting certain frequencies which tend to appear when a person is lying, the test administrators are able to detect untruthful answers to questions.

In addition to the test requirement, each employee was also required to sign a standardized consent form provided by the company conducting the tests. Larsen and Jacobs refused to sign the consent form and were thus unable to take the test. As a result of their failure to take the test, their employment was terminated.

Both employees brought an action for damages against Motor Supply Company, alleging that their termination was wrongful. The trial court granted summary judgment for Motor Supply Company, and Larsen and Jacobs have appealed. We affirm the summary judgment.

The rule of law governing the right to terminate employment-at-will contracts is well established. Either party may terminate the contract at any time for any reason. *See, e. g., Mallard v. Boring*, 182 Cal. App.2d 390, 6 Cal.Rptr. 171 (1960); *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). *See*

*generally*, Annot. 62 A.L.R.3d 271 (1975). Language in several decisions indicates Arizona courts have recognized the general rule. In *Builders Supply Corp. v. Shipley*, 86 Ariz. 153, 341 P.2d 940 (1959), our Supreme Court stated:

> [W]here a contract for personal services contains no time limit it may be terminated by either party, thus leaving the parties free to enter into a new contract with different terms for the same services.

*Id.* at 155, 341 P.2d at 941. *See also Horizon Corp. v. Weinberg*, 23 Ariz.App. 215, 217, 531 P.2d 1153, 1155 (1975). Neither *Builders Supply* nor *Horizon Corporation*, however, considered whether there might be any constraints placed on the employer's right to exercise his power to terminate any employee at will. Thus, there is no Arizona authority directly applicable to this case.

Some jurisdictions have carved small exceptions to the general rule. In *Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959), a California court held that an employee could not be discharged for refusing to commit perjury before a legislative committee. The court noted that an employer's right to discharge an employee under a terminable-at-will contract may be limited by statute or by considerations of public policy. *Id.* at 188, 344 P.2d at 27. In *Petermann*, the public policy limiting the employer's right to discharge the employee was found in the statute prohibiting perjury. Similarly, in *Frampton v. Central Indiana Gas Co.*, *supra*, the court held that the employer could not discharge the employee in retaliation for filing a workman's compensation claim.

*Petermann* and *Frampton*, however, represent very limited exceptions to the general rule. As the California court stated in *Becket v. Welton Becket & Associates*, 39 Cal.App.3d 815, 114 Cal.Rptr. 531 (1974):

> In each of these cases the public policy was evidenced by either a criminal statute or a statute designed to specifically protect the rights of the employee vis-a-vis the employer, . . . .

*Id.* at 821, 114 Cal.Rptr. at 534. In this case, the appellants have cited us to no similar public policy which would be advanced by requiring damages for their discharge. The rationale of *Petermann* and *Frampton* is therefore not applicable to this case.[1]

There has also been some judicial recognition of a cause of action arising from wrongful discharge where the discharge was "arbitrary and retaliatory." See *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974) (Roberts, J., dissenting). In *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974), the New Hampshire supreme court held that:

> [T]ermination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not [in] the best interest of the economic system or the public good and constitutes a breach of the employment contract.

*Id.* at 133, 316 A.2d at 551.

In this case, the appellants maintain that the consent form which they were required to sign before taking the test contained several false statements. It is true that the standardized consent form furnished by the testing company contains several statements which were not directly applicable to the appellants. Other statements in the form do not appear to be a true reflection of the circumstances under which the appellants were to take the test. Appellants assert that signing the consent form would have constituted "subscribing to falsehoods which would be offensive to reasonable traditional moral principles." They argue that this court should not condone their discharge in retaliation for refusing to sign a morally offensive document. In this way, the appellants seek to bring themselves within the rule expressed by the *Monge* court.

We are unpersuaded that the appellants' discharge was, in any way, malicious, arbi-

---

1. The question could arise, for example, under A.R.S. § 16–897 (absence from employment for voting), A.R.S. § 21–236 (jury duty) or A.R.S. §§ 26–167, 26–168 (national guard duty).

trary, or retaliatory. Although appellants make general allegations of bad faith, they advance no specific facts showing bad faith. They made no attempt to correct the consent form, suggest a substitute, or negotiate a different procedure. They simply refused to sign the consent form, with the result that they did not take the test. In essence, their termination was for failure to submit to a new company policy. Even in cases where an employee has a contract with a definite duration, the employee's refusal to obey company policy justifies his discharge. *See Kirchof v. Friedman*, 10 Ariz.App. 220, 457 P.2d 760 (1969). Further, *Monge* does not represent the law in Arizona. In our opinion, our Supreme Court would extend the rule in *Builders Supply Corp. v. Shipley, supra*, to exclude the application of a "bad faith" exception to employment contracts of an indefinite term.

On the facts of this case, we see no reason to circumscribe an employer's right to terminate an employee for his refusal to follow company policy. Summary judgment was thus properly granted.

Affirmed.

WREN, P. J., and JACOBSON, J., concur.