**Herbert L. QUIST, Insurance Consultants Incorporated, a corporation, Plaintiffs,**

v.

**The GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a corporation, Defendant.**

**No. Civ. 77–227 Phx. WPC.**

United States District Court,
D. Arizona.

July 12, 1978.

Michael L. McAllister, Hofmann, Salcito & Stevens, P. A., Phoenix, Ariz., for plaintiffs.

Douglas L. Irish, Lewis & Roca, Phoenix, Ariz., for defendant.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

This action primarily raises issues of contract interpretation. In 1971, plaintiff Quist entered into a "Group District Agent's Agreement" with the defendant Guardian Life Insurance Company. Under the agreement, plaintiff and his appointed brokers were authorized to solicit applications for group insurance within an assigned territory. Plaintiff was compensated solely by commissions. Under the agreement, three kinds of commissions can be identified: a first year commission, a renewal commission, and an overriding commission. The first year commission is a percentage of the premiums paid the first year the group policy is effective. The renewal commission is a percentage of the premiums paid after the first year the group policy is effective. Section 2(C) of the agreement defines overriding commission.

> On group insurance and group annuities produced by the Principal personally, or by brokers under a contract of agency made by him, the Company will pay the Principal the overriding commissions in accordance with the following schedule:
>
> > First year and Renewal years: 20% of the commissions due and payable under Appendix A, exclusive of service fees, if any.

The contract also stated that it was terminable at will.

In 1977, Guardian Life terminated the agreement. Section 3(B) of the agreement spells out plaintiff Quist's rights upon termination.

> (1) If this Agreement is terminated by reason of death of the Principal or the death of a partner or officer of the Principal at any time, the overriding commissions as stated in Section 2, less the termination deduction stated below, shall be paid to the Principal.
>
> (2) If this Agreement terminates within or at the end of the first contract year, other than by death, no renewal overriding commissions shall be paid to the Principal.
>
> (3) If this Agreement terminates for any reason, other than death, after it has been in force for more than one year, the overriding commissions as stated in Section 2, less the termination deduction stated below, shall be paid to the Principal.

> ### Termination Deduction
>
> The renewal deduction for Group Insurance and Group Annuities is 100% of the overriding commissions. Policy years are counted from the effective date of each group policy or contract. No termination deduction shall be imposed on the premiums of the first policy year.
>
> In case of such termination the Company shall also pay the Principal commis-

sions on his personal production according to the provisions of Appendix A and Section 2. Except as stated in subsection (B) of this Section, it is expressly understood and agreed that after the date of termination of this Agreement, the Principal or his legal representatives shall have no claim to any commissions, collection fees, expense reimbursements or any other form of compensation.

Guardian Life concluded that section 3(B) precluded the payment of renewal overriding commissions to plaintiff Quist after termination of the contract. Quist then brought this diversity action for breach of contract and interference with business relationships. The action is before the Court on defendant's motion for summary judgment and plaintiff's cross-motion for partial summary judgment.

■ The first question presented is whether Quist is entitled to overriding commissions under the agreement. The plaintiff's right to compensation is governed solely by the contract.

The rights of parties to an action for commissions on insurance policies must be determined by reference to their contract. However, evidence as to trade usage and customs may be considered in determining the meaning of the terms of the contract, and if the contract is ambiguous, other extrinsic evidence should be considered by the court where it is relevant.

.        .        .        .

Generally an insurance agent is considered to have no vested right in commissions on renewal premiums, but rather his right to be paid such commissions must be based entirely upon the terms of his contract of employment.

J. Appleman, Insurance Law and Practice §§ 8960, 9001. Faced with a problem of contract interpretation, the strategy of the litigants is not difficult to fathom.

[W]here the claim or defense is predicated upon a written integrated contract that is unambiguous, the parol evidence rule may cut off the presentation of matter that would otherwise raise factual issues and hence summary judgment may be appropriate where in the absence of the parol evidence rule it would not be. If, however, the contract is not integrated or the contract is ambiguous, so that the parol evidence rule does not apply, and there are factual issues as to the contract entered into, summary judgment is inappropriate.

Moore's Fed.Prac. ¶ 56.17[11].

Defendant Guardian Life argues that the meaning of the contract is plain and clear. After termination of the agreement, Quist is entitled to overriding commissions less the termination deduction. The termination deduction for overriding commissions based upon first year premiums is zero. The termination deduction for the overriding commissions based upon renewal premiums is the full amount of the overriding commissions, or, in simpler words, no renewal overriding commissions will be paid. Plaintiff Quist responds that the contract is ambiguous. The contract is poorly written, and if the contract intended to provide for no renewal overriding commission, then the contract could expressly say so. Indeed, section 3(B)(2) of the agreement explicitly states no renewal overriding commissions shall be paid if the contract is terminated within one year. Moreover, it is not wholly certain what mathematical computation the termination deduction calls for. Inasmuch as the contract does not define the "renewal deduction" as the "termination deduction for renewal overriding commissions," plaintiff reasons that the contract is ambiguous. Looking to the surrounding circumstances, the plaintiff did not understand the contract to provide for the elimination of the renewal overriding commissions.

On a motion for summary judgment, all evidence and inferences drawn from evidence must be viewed in the light most favorable to the party opposing the motion. *Dalke v. Upjohn Co.,* 555 F.2d 245, 248 (9th Cir. 1977); *Stansifer v. Chrysler Motors Corp.,* 487 F.2d 59, 63 (9th Cir. 1973). Insofar as the contract does not define its terms, the Court must draw the inference

that the meaning of certain portions of the contract, when viewed in isolation, is not plain and clear. The Court also accepts as true plaintiff's allegation that he understood the contract to allow for overriding commissions after termination. Nonetheless, when the contract is considered as a whole, defendant Guardian Life is entitled to summary judgment. As a matter of law, an interpretation which gives effect to every part of an agreement is preferred to one that gives no effect to a part of the agreement. Restatement Contracts § 236(a). Plaintiff Quist fails to advance an interpretation of the contract which gives effect to the entire contract. Rather, plaintiff simply ignores the "renewal deduction" clause, concluding that it is surplusage without meaning. On the record, the only plausible interpretation of the agreement which gives effect to the whole contract is the interpretation offered by defendant. Therefore, defendant is entitled to summary judgment on plaintiff's claim for renewal overriding commissions.

■ The next question raised is whether the defendant Guardian Life breached the agreement when the agreement was terminated in 1977. The contract provides that it is terminable at will upon notice to the other party. This clause is valid and enforceable. *See Larsen v. Motor Supply Co.,* 117 Ariz. 507, 573 P.2d 907 (Ct.App.1977). Plaintiff argues that the agreement was modified by a letter of August 10, 1971. On its face, this letter neither amends nor modifies the termination clause of the contract, and plaintiff's argument is frivolous. Indeed, the agreement and the August 10th letter constitute a complete integrated agreement. Proof of any oral representations made contemporaneously with the agreement is presumably barred by the parol evidence rule.

■ Plaintiff argues that the contract was subsequently modified by repeated oral representations that he would be secure in his contract as long as he sold a certain amount of group insurance a year. Alternatively, plaintiff argues that these representations create a promissory estoppel.

Restatement Contracts § 90. The alleged subsequent oral representations lack sufficient consideration to work a contract modification, however. *See id.* § 76(a) (an action required by a legal duty is not consideration). Moreover, subsequent oral representations will not support a claim for estoppel because the plaintiff was not induced to perform any action or forbearance beyond those required by contract. *Id.* § 90. Defendant is thereby entitled to summary judgment on the breach of contract for termination claim. Moreover, insofar as defendant was privileged to terminate the contract, plaintiff cannot allege that the termination interfered with his business relationships. *See* Restatement Torts §§ 767 to 774. Therefore,

IT IS ORDERED:

1. Defendant's motion for summary judgment is granted.

2. Plaintiff's cross-motion for partial summary judgment is denied.

3. Counsel for defendant will prepare a proposed judgment, approved by counsel for plaintiff as to form only, and submit the proposed judgment to the Court within ten (10) days from the date of this order.

4. The pretrial conference scheduled herein for August 21, 1978, is vacated.