This is an appeal by Dwight Smith from a grant of summary judgment in favor of American Cast Iron Pipe Company (ACIPCO).
Smith was employed by ACIPCO in 1969. On October 3, 1977, three suspicious cigarette butts were found in Smith's automobile which was parked in ACIPCO's parking lot. Later that morning Joe F. Curtis, the manager of Employment Safety and Security at ACIPCO, interviewed Smith regarding the discovery. As a result of this meeting disciplinary action against Smith was recommended.
On October 12, 1977, Smith met with the Investigative Committee of the Board of Operations. This subcommittee of the ACIPCO Discipline Committee is composed of four members elected by their fellow employees. The Investigative Committee, which investigates all disciplinary charges brought against employees of ACIPCO, read to Smith the letter from Curtis alleging violations of Company Rules 16 and 17. These rules dealt respectively with the possession of and "trafficking" in drugs. Smith admitted only that the substance was in his car and denied specifically that he was guilty of a Rule 17 infraction, which unlike a first violation of Rule 16, carries a penalty of discharge. On the advice of his attorney however Smith refused to take a polygraph test. The meeting was adjourned without further action. Later that morning Smith met with the Committee again and at that meeting he was read a September 22, 1977 clarification of ACIPCO's verification rule that provided for the dismissal of any employee who failed to cooperate with the investigation committee, including one who refused to take a polygraph test when required. Smith indicated that he was aware of the notice because he had seen it on the company bulletin boards. He still refused however to take the polygraph test. Thereafter Smith was informed that the Committee had scheduled a polygraph exam for the next day. Smith reported as directed, but once again he refused to be examined even though he was again read the rule and told of the consequences for refusal to comply. Later that morning the full Discipline Committee was convened. The minutes of that meeting reflect that "[u]pon review of [the] facts . . . Mr. Carter made a motion to discharge Dwight Smith for failure to cooperate in the Discipline Committee's investigation of alleged rule violations, including failure to take the polygraph test when requested. Mr. Langner seconded the motion. The vote for discharge was unanimous."
Smith filed suit for injunctive relief, declaratory relief and damages. After a hearing, ACIPCO's motion for directed verdict was granted. Smith then filed an amendment alleging breach of contract and fraud. This appeal arises from the grant of ACIPCO's motion for summary judgment.
A motion for summary judgment may be granted only when the movant has carried his burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Mason v. Connecticut General LifeInsurance Co., Ala., 367 So.2d 1374 (1979); Board of Water andSewer Commissioners of the City of Mobile v. Alabama PowerCompany, Ala., 363 So.2d 304 (1978); Powell v. South CentralBell Telephone Co., Ala., 361 So.2d 103 (1978).
This case presents essentially three issues, (1) whether Smith was in fact discharged for a failure to cooperate in the Discipline Committee's investigation; (2) whether there was a failure to cooperate under the terms of the contract; and (3) whether discharge for that offense was proper under our law. We answer all issues affirmatively. *Page 285 
The official minutes of the October 13, 1977 meeting of the Discipline Committee show that the appellant, Smith, was discharged for a failure of cooperation. Smith, however, refers us to testimony which he contends created an issue of fact on this matter. On direct examination the following exchange took place between Smith's attorney and Mr. Alex Fitts, an employee member of the Discipline Committee:
 Q Okay. What is your understanding of the charges against Dwight Smith?
A He was charged with Rule 16 and 17.
 Q Is that your total understanding of the charges against Dwight Smith?
A Yes, sir.
Later another employee member of the Discipline Committee, Mr. Luke Walker, was questioned by Smith's attorney:
 Q Mr. Walker, as a member of the investigating group, as a member of the Discipline Committee, what is your understanding of the charges that were brought against Mr. Dwight Smith in which he was terminated?
A What is my understanding of the charges?
Q Yes, sir.
A My understanding is that he violated Plant Rules.
Q What rule, sir?
A Rule 16, I know.
Q Is that all, sir?
At this point the counsel for appellee objected, apparently to the line of questioning on the ground that the reason for discharge was reflected in the minutes of the meeting. The court sustained the objection. The evidence, however, was not excluded from the record and hence is properly before us. Nevertheless, from a review of the record, including the complete testimony of both the above persons, we do not find that a genuine issue of material fact is presented. The underlying charges against Dwight Smith were indeed violations of Rules 16 and 17. The cause of the discharge however was clearly a failure to cooperate in the investigation of those charges. Nothing in the testimony of Mr. Fitts, or Mr. Walkerpresents a scintilla of evidence that Smith was not dischargedunanimously for this reason. Therefore we must determine whether Dwight Smith did indeed fail to cooperate.
ACIPCO relies only upon the refusal of Smith to take the polygraph test to show the failure of cooperation. Polygraph, or "lie detector," tests have been used by ACIPCO for investigative purposes since 1971. The appellant had once taken the test in the course of an investigation and been found to be lying, which he has since admitted to be the case. The basis for such an examination is found within the company handbook:
VERIFICATION
 When reports and information furnished to the Discipline Committee are conflicting, a Polygraph test may be used to assist the Discipline Committee in making a fair decision on the matter. Only licensed Polygraph technicians will be used. Two members of the Discipline Committee (One employee representative from the Discipline Committee and one Management representative) will accompany those to be tested to furnish background and other information required by the Polygraph technicians in conducting the test. Wherever by Polygraph test or other means of verification the Discipline Committee finds that an employee has deliberately reported false information to the Committee, the penalty will be doubled. Any accusation determined to be false by the Discipline Committee through the use of Polygraph tests or other means of verification will be removed from the employee's record.
 These rules and penalties may be abrogated or changed by the Company. [emphasis added]
 The above rules, so long as in effect, will be enforced by the Company, and any employee violating any of the rules will be subjected to disciplinary action of not less than the minimum penalty above specified.
On September 22, 1977, prior to the incidents in question, a clarification of this *Page 286 
provision was approved by the Board of Management:
 POLICY CLARIFICATION PLANT RULE VIOLATIONS — VERIFICATION
 The following change has been made to the first paragraph of the VERIFICATION section pertaining to our Plant Rules and Regulations.
 This is no change from the basic intent. The revision is simply a clarification of wording for more positive understanding.
 When reports and information furnished to the Discipline Committee are conflicting, a Polygraph test may be required to assist the Discipline Committee in making a fair decision on the matter. Only licensed Polygraph technicians will be used. Two members of the Discipline Committee (one employee representative from the Discipline Committee and one Management representative) will accompany those to be tested to furnish background and other information required by the Polygraph technicians in conducting the test. Whenever by Polygraph test or other means of verification the Discipline Committee finds that an employee has deliberately reported false information to the Committee, the penalty will be doubled. Any accusation determined to be false by the Discipline Committee through the use of Polygraph tests or other means of verification will be removed from the employee's record.
 Opportunity is provided for any employee to clarify his innocence by Polygraph test. Refusal of an employee to cooperate with the investigative procedure of the Discipline Committee, including the refusal to take a Polygraph test when required, shall be reasonable cause for discharge. [emphasis added]
Under the plain wording of the verification provisions as clarified we hold that a refusal to take a polygraph test when one is required is a failure to cooperate. Smith argues however that an examination was not required in this situation and therefore his refusal was not a failure to cooperate. We disagree. The verification provisions as clarified state that a polygraph test may be required "[w]hen reports and information furnished to the Discipline Committee are conflicting. . . ." In this instance Smith clearly denied a violation of Rule 17, and, while he admitted the marijuana was in his automobile, Smith did not clearly admit guilt under Rule 16. In fact, in brief counsel states that,
 [a]ppellant was charged on mere suspicion through observation of "what appeared to be two marijuana cigarette butts in the ash tray" of an unoccupied car. Appellee concedes that the use of marijuana per se off-premises of ACIPCO is not a violation of its rules . . . The record therefore is questionable both on the fact of "use and possession" and whether the suspicious looking objects were punishable as to any employee.
We hold that there was a conflict on these facts for which the Discipline Committee could require a polygraph test under its rules. Under the terms of the verification provisions then, Smith did fail to cooperate when he refused to take the polygraph test. This leads us to the third question, whether discharge for that failure to cooperate was proper.
We hold that ACIPCO's discharge of the appellant was proper once his failure to cooperate was shown. This follows because the penalty for such an offense is clearly stated in the clarified verification provisions to be discharged. Instances where such a penalty has been upheld are numerous. Swope v.Florida Industrial Com. Unemployment Comp. Bd. of Review, Fla.Dist.App., 159 So.2d 653 (1963); Bowman Transportation,Inc., 61 L.A. 549 (1973); Warwick Electronics, Inc., 46 L.A. 95 (1966); Allen Industries, Inc., 26 L.A. 363 (1956). Smith however properly raises some collateral issues which he contends made discharge improper.
First, the appellant contends that the penalty was improper because the employees were not given "notice" of the *Page 287 
"clarification" until October 4, 1977, one day after the "substance" was discovered in his automobile. This argument ignores the fact that Smith was not discharged for possession of the proscribed substance. In this case Smith was discharged for failure to cooperate in refusing to take the polygraph test. The first refusal of the test was on October 12, 1977 several days after the "clarification" was posted. Further, Smith admitted that he had read the clarification on the bulletin board and knew the consequences for its violation. The Discipline Committee itself read the "clarification" to Smith not once but twice. There is no question but that Smith knew of the clarification and the penalty for its violation prior to his refusal.
Secondly, Smith argues that the polygraph requirement should be void as repugnant to public policy. He bases this argument upon various constitutional protections afforded an accused in a criminal case. That argument is untenable. In a criminal situation the protections are constitutional, aimed at protecting an individual's freedom from the power of the state. In the private employment situation the protections are contractual, and are aimed solely at regulating the employment relationship. See e.g., Allen Industries, Inc., supra at 368. In the ACIPCO community a contractual precondition to discharge is that the employee be found to have violated one or more of the established plant rules. See Duff v. ACIPCO, Ala.,362 So.2d 886 (1978). The record shows that the contract of employment between the appellant and ACIPCO provided for discharge in this situation. Thus the analogy offered by the plaintiff has no application here.
Because ACIPCO carried its burden of establishing no genuine issue of fact the trial court's grant of summary judgment must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and SHORES, JJ., concur.