325 S.E.2d 111

Deborah J. CORDLE, Brenda G. Billings and Brenda L. Hall

v.

GENERAL HUGH MERCER CORP., A W.Va. Corp., D/B/A Holiday Inn of Princeton.

No. CC937.

Supreme Court of Appeals of West Virginia.

July 13, 1984.

Dissenting Opinion July 23, 1984.

Dissenting Opinion July 26, 1984.

Rehearing Denied Dec. 21, 1984.

John P. Anderson, Princeton, for plaintiff.

Michael F. Gibson, Princeton, for defendant.

West Virginia. This Court has before it all matters of record and the briefs of counsel.

John P. Anderson, Princeton, for plaintiff.

Michael F. Gibson, Princeton, for defendant.

McHUGH, Chief Justice:

This action is before this Court upon certified questions from the Circuit Court of Mercer County, West Virginia. The certified questions were docketed by this Court by order entered on December 8, 1983. This action involves the termination by a private corporation of the employment of certain "at will" employees because those employees refused to take a polygraph test. We are asked to review the question of whether such termination of employment violated the public policy of

I

■ The defendant, General Hugh Mercer Corporation, a private corporation, operated a "Holiday Inn" in Princeton, Mercer County, West Virginia. The plaintiffs, Deborah J. Cordle, Brenda G. Billings and Brenda L. Hall, were hired by the defendant as cleaning maids between May, 1977 and May, 1978. The record indicates that the plaintiffs were "at will" employees of the defendant.[1]

On January 14, 1981, the plaintiffs signed agreements[2] which provided that, when required by the defendant, the plaintiffs would take a polygraph test.[3] Subsequently, by memorandum dated June 3, 1982, the defendant notified the plaintiffs, and other employees, that polygraph testing would soon begin.[4] The plaintiffs, how-

1. Except for the written agreement dated January 14, 1981, described *infra*, containing the polygraph requirement, the plaintiffs in this action were employed by the defendant under oral agreements, rather than under written contracts, and the record indicates that the expected duration of the plaintiffs' employment with the defendant and the potential reasons for the termination of the plaintiffs' employment were never specified. *See Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978) (discussing "at will" employees).

2. The agreement of January 14, 1981, signed by the plaintiffs provided as follows:

This is to advise that your application for employment will be processed as quickly as possible. IT IS UNDERSTOOD AND AGREED THAT ANY AGREEMENT ENTERED INTO BETWEEN THIS COMPANY AND YOU IS PREDICATED UPON THE TRUTHFULNESS OF THE STATEMENTS HEREIN CONTAINED. I authorize an investigation of all statements contained in this application, including information concerning my character, general reputation, personal characteristics, and mode of living. I authorize you or my former employers or references to furnish any information concerning me, and I hereby release all such persons from any liability or damages on account of having furnished such information. I further agree that if requested, I will take a physical examination at the expense of this Holiday Inn as a pre-condition of my employment, and further, unless prohibited under local laws, I will take a polygraph examination prior to, during, or at the termination of my employment. I understand that if I am employed, the first Ninety (90) days is a probationery [sic] period, and further agree that my employment is for no

definite period and regardless of the date of payment of my wages and salary, may be terminated at any time, without any previous notice, and in the event of such termination, any wages and salary due and owing to me shall be paid to me at the next regularly scheduled pay day. I further agree that while I am on the premises of the Holiday Inn, I, my vehicle, or any personal items, i.e. purse, handbags, paper bags, boxes and cartons, may be searched. I further understand that during the course of my employment, I may be given uniforms, merchandise, equipment, or entrusted with monies or other valuable property, and that in the event I fail to return and/or properly account for same, Holiday Inn is authorized to deduct or withhold my salary or wages for the following: uniforms, merchandise, equipment, loans, shortages, or advances on salary or wages.

3. In an affidavit filed before the Circuit Court of Mercer County, the plaintiffs asserted as follows:

On January 14, 1981, we were told that we had to sign the agreement to take the polygraph test or we would not get our pay day which was due that week and, if we did not sign the agreement, we were told not to come back to work by our supervisor, Mrs. Shirley Lawrence. We reluctantly signed the agreement under protest. . . .

4. The defendant's memorandum dated June 3, 1982, provided as follows: "We are instituting a Tri-Monthly, POLYGRAPH TESTING at this property. You are therefore put on notice that 'Amnesty' has been granted to 'All' Before *June 3, 1982*. Testing will be in detail of anything after June 3, 1982. Names will be drawn (LOTTERY) style, Tri-Monthly for test."

ever, refused to take a polygraph test, and on October 12, 1982, their employment with the defendant was terminated.[5]

The plaintiffs instituted an action in the Circuit Court of Mercer County against the defendant and asserted that their employment was wrongfully terminated. The defendant filed a motion to dismiss the plaintiffs' complaint.

As reflected in its final order, the circuit court, considering the defendant's motion and other matters of record, made the following findings of fact and conclusions of law:

1. That plaintiffs were employees terminable at will under the law of the State of West Virginia;

2. That plaintiffs were terminated from employment with defendant for reason of their refusal to take a polygraph examination;

3. That said defendant's termination of plaintiffs was wrongful in that it violated a substantial public policy principle;

4. That the matter of what constitutes a violation of substantial public policy of this State is a matter of law rather than a question [of] fact to be decided by a jury;

5. The Legislature of this State has now enacted legislation, codified in West Virginia Code, Chapter 21, Article 5, Section 5(b), *et seq.*, which places substantial limitations on employers' use of polygraph testing on their employees.[6]

The circuit court, treating the defendant's motion to dismiss as a motion for summary judgment, denied the motion and certified the following questions to this Court:

A. Whether under facts evidenced by the pleadings and affidavits in this case, defendant's termination of plaintiffs' employment for their failure to undergo a polygraph examination violates a substantial public policy of this State?

B. Whether the determination of the existence of a substantial public policy of this State is a question of fact for the jury or a question of law for the court?

## II

■ Before addressing the question concerning polygraph testing, we note at the outset that certified question "B" re-

5. By letter dated October 7, 1982, the defendant notified each of the plaintiffs that their employment would be terminated unless they agreed to take the polygraph examination. That letter stated as follows:

This is to advise you that pursuant to the agreement which you entered into with the Holiday Inn dated January 14, 1981, a copy of which is attached to this letter, that unless you agree to take a polygraph examination within five (5) days of your receipt of this letter, I will have no other alternative than to terminate your employment with the Holiday Inn. Please be further advised that this termination of employment should not in any manner be construed as an accusation that you are guilty of any criminal conduct or other wrong doing. I consider your failure to take this examination a breach of the aforesaid agreement, which is a condition of your employment. If you agree to undergo the polygraph examination within five (5) days of your receipt of this letter, you may disregard this correspondence.

6. *W.Va.Code,* 21–5–5b [1983], provides as follows:

No employer may require or request either directly or indirectly, that any employee or prospective employee of such employer sub-

mit to a polygraph, lie detector or other such similar test utilizing mechanical measures of physiological reactions to evaluate truthfulness, and no employer may knowingly allow the results of any such examination or test administered outside this State to be utilized for the purpose of determining whether to employ a prospective employee or to continue the employment of an employee in this State: Provided, that the provisions of this section shall not apply to employees of an employer authorized to manufacture, distribute or dispense the drugs to which article five, chapter thirty applies, excluding ordinary drugs as defined in section twenty-one, article five, chapter thirty: Provided, however, that the provisions of this section shall not apply to law-enforcement agencies or to military forces of the State as defined by section one, article one, chapter fifteen of the Code: Provided further, that the results of any such examination shall be used solely for the purpose of determining whether to employ or to continue to employ any person exempted hereunder and for no other purpose. *See W.Va.Code,* 21–5–5d [1983]. *W.Va.Code,* 21–5–5b [1983], was promulgated subsequent to the period in question relating to this action. That statute is, therefore, not dispositive of this action.

quires little discussion. We affirm the ruling of the circuit court and hold that a determination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for a jury. The parties did not contest the ruling of the circuit court upon that point. As stated in *Allen v. Commercial Casualty Ins. Co.,* 131 N.J.L. 475, 37 A.2d 37 (1944):

> Much has been written by text writers and by the courts as to the meaning of the phrase "public policy." All are agreed that its meaning is as "variable" as it is "vague," and that there is no absolute rule by which courts may determine what contracts contravene the public policy of the state. The rule of law, most generally stated, is that "public policy" is that principle of law which holds that "no person can lawfully do that which has a tendency to be injurious to the public or against public good * * *" even though "no actual injury" may have resulted therefrom in a particular case "to the public." It is a question of law which the court must decide in light of the particular circumstances of each case.
>
> The sources determinative of public policy are, among others, our federal and state constitutions, our public statutes, our judicial decisions, the applicable principles of the common law, the acknowledged prevailing concepts of the federal and state governments relating to and affecting the safety, health, morals and general welfare of the people for whom government—with us—is factually established.

131 N.J.L. at 477–78, 37 A.2d at 38–39.

The answer to certified question "A," however, is more complex. The plaintiffs were at will employees of a private corporation, and, as the circuit court concluded, they were terminated from their employment because they refused to take a polygraph test. This Court must determine whether that termination violated the public policy of this State.

First, we conclude that "at will" employees need not be distinguished from other employees in terms of whether the termi-nation of employment for refusal to take a polygraph test violates public policy. At will employees, as well as other employees, have certain protections in circumstances involving public policy. In *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978), the plaintiff, an at will employee at a bank, asserted that he was discharged from his employment for attempting to require his employer to comply with federal and state consumer credit and protection laws. This Court noted that the protection of consumers covered by consumer credit and protection laws is a matter of public policy in West Virginia and that such a policy should not be frustrated by denying to the plaintiff a remedy, under the facts alleged, against his employer relating to the discharge. This Court, in *Harless,* held in the syllabus as follows:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

*See also Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 285 S.E.2d 679 (1981); *Shanholtz v. Monongahela Power Company,* 165 W.Va. 305, 270 S.E.2d 178 (1980).

In *Perks v. Firestone Tire & Rubber Company,* 611 F.2d 1363 (3rd Cir.1979), the United States Court of Appeals for the Third Circuit held that the discharge of an at will employee because of a refusal to submit to a polygraph examination required by an employer gave rise to a cause of action for "tortious discharge" under Pennsylvania law. 611 F.2d at 1365. In the *Perks* opinion, the court cited a Pennsylvania statute which proscribed the use of polygraph examinations by employers. However, the court indicated that the statute embodied a "recognized facet of public policy" (611 F.2d at 1366) relating to the protection of areas of an employee's life in which an employer has no legitimate interest.

Moreover, the Supreme Court of New Jersey in *State v. Community Distributors, Inc.,* 64 N.J. 479, 317 A.2d 697 (1974), affirmed the defendant's conviction for violating a New Jersey statute, which statute provided, *inter alia,* that employers could not "influence, request or require an employee to take or submit to a lie detector test...." The facts in that action indicated that polygraph examinations were given to certain employees of the defendant at the defendant's request. Unlike the action presently before this Court, which does not involve a statute relating to polygraph examinations (see n. 6, *supra*), the court in *State v. Community Distributors, Inc.,* was directly concerned with the applicability and constitutionality of anti-polygraph legislation in New Jersey. We note, however, the concern expressed by the New Jersey court concerning the existence of polygraph testing in the employer-employee context:

> Nor is there any assurance of true voluntariness [in taking a polygraph examination] for the economic compulsions are generally such that the employee has no realistic choice. Organized labor groups have often expressed intense hostility to employer requirements that employees submit to polygraph tests which they view as improper invasions of their deeply felt rights to personal privacy and to remain free from involuntary self-incrimination.

64 N.J. at 484, 317 A.2d at 699.[7]

*Compare, Smith v. American Cast Iron Pipe Company,* 370 So.2d 283 (Ala.1979), employment termination upheld where written company rules stated that when disciplinary reports concerning an employee were conflicting, a polygraph examination could be required, and the employee, accused of possessing marihuana contrary to company policy, refused to take a polygraph examination; and *Larsen v. Motor Supply Company,* 117 Ariz. 507, 573 P.2d 907 (1977), employment termination upheld where at will employees refused to sign a written consent to submit to a psychological stress evaluation test (which test was similar to a lie detector test).[8]

As in *Perks* and *State v. Community Distributors, Inc., supra,* the West Virginia Supreme Court of Appeals, as discussed below, has also recognized that certain areas of an individual's life are entitled to protection from unwarranted intrusion. Specifically, as the following cases indicate, in West Virginia, a legally protected interest in privacy is recognized.[9]

A bag which the plaintiff carried into a grocery store was searched by a grocery store employee in *Sutherland v. Kroger Company,* 144 W.Va. 673, 110 S.E.2d 716 (1959). Noting that the plaintiff's cause of

---

7. *See* Note, "Lie Detectors in the Employment Context," 35 La.L.Rev. 694, 697 (1975), which states, in part, as follows:

> The desire to protect employees from unfair treatment has been the basis for major legislation in the sphere of private employment and has expressed itself in private adjudication. The largest body of decisional authority on private employer use of the lie detector exists in the field of labor arbitration. In determining just cause for dismissal, arbitrators have frequently refused to admit test results as evidence before arbitral tribunals and have opposed the use of the device by employers to investigate misconduct and to predicate discharge of employees.

*See also* Comment, "Privacy: The Polygraph in Employment," 30 Ark.L.Rev. 35 (1976), which, referring to applicants for employment, states as follows:

> The current and commonplace use of the polygraph examination by employers presents serious privacy questions. On the surface, requiring the job applicant to undergo a test which will determine his truthfulness and reliability is harmless. But the problem is much more profound. Often the polygraph examiner probes areas which the applicant prefers to remain personal.

30 Ark.L.Rev. at 35.

8. For authority in related areas concerning polygraph examinations, see "Validity and Construction of Statute Prohibiting Employers From Suggesting or Requiring Polygraph or Similar Tests as Condition of Employment or Continued Employment," annot., 23 A.L.R.4th 187 (1983); and "Employee's Refusal to Take Lie Detector Test as Barring Unemployment Compensation," annot., 18 A.L.R.4th 307 (1982).

9. Citing *Sutherland* and *Roach, infra,* the United States Supreme Court in *Cantrell v. Forest City Publishing Co.,* 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974), stated (in footnote two) that West Virginia recognizes a "legally protected interest in privacy."

action against the store was based upon a trespass which involved an invasion of the plaintiff's right of privacy, the West Virginia Supreme Court of Appeals indicated that the plaintiff could seek recovery. 144 W.Va. at 684, 110 S.E.2d at 724. Specifically, this Court held in syllabus point 3 as follows: "An illegal search by a private individual is a trespass in violation of the right of privacy." In *Roach v. Harper*, 143 W.Va. 869, 105 S.E.2d 564 (1958), the plaintiff asserted that her landlord, the defendant, installed a listening device in the plaintiff's apartment by way of which the defendant heard the plaintiff's confidential conversations. The West Virginia Supreme Court of Appeals concluded in *Roach* that the plaintiff had a right to maintain an action for "invasion of privacy." This Court stated that "the right to privacy is an individual right that should be held inviolate. To hold otherwise, under modern means of communication, hearing devices, photography, and other technological advancements, would effectively deny valuable rights and freedoms to the individual." 143 W.Va. at 876, 105 S.E.2d at 568. Syllabus point 1 of *Roach* states as follows: "The right of privacy, including the right of an individual to be let alone and to keep secret his private communications, conversations and affairs, is a right the unwarranted invasion or violation of which gives rise to a common law right of action for damages."

Finally, in *Golden v. Board of Education of the County of Harrison*, 169 W.Va. 63, 285 S.E.2d 665 (1981), this Court discussed the right of privacy in the context of teacher employment. In *Golden*, a high school guidance counselor was dismissed from her employment for "immorality." This Court reversed the guidance counselor's dismissal and noted, *inter alia*, that unless the alleged immoral conduct had an impact upon a teacher's fitness to teach or upon the school community, such a dismissal would improperly intrude "upon the teacher's right of privacy." 169 W.Va. at 69, 285 S.E.2d at 669.[10]

■ The teachings of *Sutherland*, *Roach* and *Golden* indicate a continuing concern for the protection of the privacy of the individual. Therefore, although the provisions of *W.Va.Code*, 21–5–5b [1983], are not before us in this action (which statute limits the use of polygraph tests by employers—see n. 6, *supra*), we perceive that statute to be the embodiment of a "recognized facet of public policy" in this State. *Perks v. Firestone Tire & Rubber Company, supra.*

■ We hold that it is contrary to the public policy of West Virginia for an employer to require or request that an employee submit to a polygraph test or similar test as a condition of employment, and although the rights of employees under that public policy are not absolute, in that under certain circumstances, such as those contemplated by *W.Va.Code*, 21–5–5b [1983], such a polygraph test or similar test may be permitted, the public policy against such testing is grounded upon the recognition in this State of an individual's interest in privacy.

For the reasons stated above, we affirm the ruling of the Circuit Court of Mercer County that the defendant's termination of the plaintiffs employment violated the public policy of this State, and we remand this action to that court for further proceedings.

Certified questions answered.

10. We stated as follows in *Golden:*
Another reason for requiring a showing that the alleged immoral conduct has a resulting impact upon the teacher's fitness to teach or upon the school community is that to allow dismissal merely upon a showing of some immoral conduct would constitute an unwarranted intrusion upon the teacher's right of privacy. This right of privacy, while not absolute, must be balanced against the legitimate interest of the school board. The conduct of a teacher ceases to be private in at least two circumstances: (1) if the conduct directly affects the performance of the occupational responsibilities of the teacher; or (2) if, without contribution on the part of the school officials, the conduct has become the subject of such notoriety as to significantly and reasonably impair the capability of the particular teacher to discharge the responsibilities of the teaching position.
169 W.Va. at 69, 285 S.E.2d at 669.

MILLER, Justice, dissenting:

The difficulty I have with the majority opinion is that at and prior to the time the plaintiffs were terminated from their at will employment, there was no established public policy that prohibited an employer from discharging an at will employee who refused to take a lie detector or polygraph test. The majority admits, as it must, that W.Va.Code, 21–5–5b (1983), did not become effective until July of 1983 (*see* 325 S.E.2d at 113–14 n. 6), which was approximately nine months after the plaintiffs' termination. This statute restricts an employer's right to utilize a lie detector on employees or to discharge them for refusing to take such a test.

Initially one might wonder why the legislature would have enacted W.Va.Code, 21–5–5b (1983), if there was an existing public policy against such practice. The obvious answer is that no such policy existed.

In *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978), we followed law from other jurisdictions and gave protection to at will employees if their discharge "contravene[d] some substantial public policy principle." Syllabus, in part, *Harless*.[1] The case involved a bank employee who was discharged when he endeavored to have his superiors comply with State and federal consumer credit and protection laws, applicable to the bank's customers. After citing a number of cases from other jurisdictions, we said in *Harless:*

> "We have no hesitation in stating that the Legislature intended to establish a clear and unequivocal public policy that consumers of credit covered by the Act were to be given protection. Such manifest public policy should not be frustrated by a holding that an employee of a lending institution covered by the Act, who seeks to ensure that compliance is being made with the Act, can be discharged without being furnished a cause

of action for such discharge." 162 W.Va. at 125–26, 246 S.E.2d at 276.

We did not have occasion in *Harless* to specifically state that the public policy standard must be in existence at the time the discharge occurs. However, it is obvious from the facts that it was in existence. Nor did we have occasion to state in *Harless* what the sources of public policy were, but again it is apparent from the opinion that a legislative enactment designed to benefit members of the public was deemed to express a public policy standard.

Courts elsewhere, in determining whether a public policy standard has been violated, have been unanimous in the view that the policy has to be preexisting and emanate from constitutional, statutory or regulatory provisions or prior judicial decisions. *Parnar v. Americana Hotels, Inc.*, 65 Hawaii 370, 652 P.2d 625 (1982); *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981); *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505, 12 A.L.R.4th 520 (1980); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). One of the most cogent statements is found in *Parnar*, 65 Hawaii at 380, 652 P.2d at 631:

> "In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject."

The majority does not cite a single case where a court has permitted an at will employee to recover on a polygraph discharge in the absence of a statute forbidding such discharge. *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir. 1979), cited by the majority, was based on a

---

**1.** The entire Syllabus of *Harless* states:

"The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to

contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge."

specific Pennsylvania statute, 18 Pa.C.S.A. § 7321(a) (1973), which made it a misdemeanor to require an employee to take a polygraph test. In the following cases, the courts have rejected suits for polygraph discharges, where there was no statutory prohibition on polygraph tests. *Green v. American Cast Iron Pipe Co.*, 446 So.2d 16 (Ala.1984); *Larsen v. Motor Supply Co.*, 117 Ariz. 507, 573 P.2d 907 (1977).

In an attempt to circumvent the lack of any established public policy regarding discharges of at will employees for refusing to take polygraph tests, the majority relies on several cases where we have recognized tort actions based on an invasion of the right of privacy. However, these cases cannot support the result reached in this case as there was no invasion of the employee's privacy. A brief analysis of the cases relied upon by the majority serves to dispel their usefulness in the present case.

*Roach v. Harper*, 143 W.Va. 869, 105 S.E.2d 564 (1958), was a tort claim for an invasion of privacy resulting from a landlord's unauthorized installation of a listening device in his tenant's apartment, which enabled him to eavesdrop on the tenant's conversations. We held that a cause of action for an invasion of privacy existed. *Sutherland v. Kroger Co.*, 144 W.Va. 673, 110 S.E.2d 716 (1959), involved a claim for false arrest, illegal search, and slander by a patron of a supermarket. She had been detained at the store and her bags that she had brought in from another store had been searched. Again, we recognized that a cause of action existed for these torts which were related to an invasion of privacy.

Finally, in *Golden v. Board of Education of the County of Harrison*, 169 W.Va. 63, 285 S.E.2d 665 (1981), we dealt with a teacher's discharge and concluded only that there were insufficient facts to warrant her discharge based on her nolo contendere plea in a magistrate court for shoplifting. The case had nothing to do with any theory of an invasion of privacy.

I do not believe that the majority intends that in any case involving an at will employee discharge, a court may after the fact seize on some nebulous theory arising out of tort law and convert it to a substantial public policy to sustain the suit. Unfortunately, some may read this into the majority's language and for this reason I respectfully dissent.

I am authorized to state that Justice Neely joins with me in this dissent.

NEELY, Justice, dissenting:

I dissent on the grounds that the majority opinion has both an unfair and unnecessary *ex post facto* effect on the defendant in this case. *W.Va.Code* 21–5–5b [1983] adequately protects employees in the future from an invasion of their privacy through a compelled polygraph examination. Because the Legislature thought that a statute governing employee privacy rights was necessary, it is more reasonable than not to infer that no public policy against polygraph examinations existed at common law before the majority opinion in this case was filed.

Law that is written in a language that no one understands or is whispered in a closet is not entitled to enforcement in the United States. At some point the judicial legislation that we call "common law development" must be judged by the standards of Article I, Section 10 of the *Constitution of the United States*. Furthermore, our Legislature has handled the problem of polygraph examinations comprehensively and forbidden this unpleasant practice in all future cases; thus there is no need for this Court to use an *ex post facto* decision to remedy a continuing problem that otherwise would be left uncured.

The defendant in this case was in the hotel business. One of the big problems in their hotel business was theft of guests' and the hotel's property. I suspect that the reason the employees in this case failed to take the polygraph examination was that they had stolen things from either the hotel or its guests. Hotels that have reputations for theft of guests' property do not thrive in the hotel business. When a hotel gets a bad reputation the hotel goes bankrupt and the honest employees are unemployed.

Consequently, I hardly find the facts of this case compelling.

This Court discussed problems of retroactivity in civil cases in *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), where we enunciated a set of criteria to determine whether it is appropriate for a new, or at least previously unarticulated, principle of law such as the one in this case to be applied to past conduct. There we said:

> If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, we will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.

*Id.* 163 W.Va. at ——, 256 S.E.2d at 889.

In the case before us none of the requirements allowing retroactivity has been met. Although this case sounds in tort, its basis is an at-will contract of employment where the law has been settled for decades. In West Virginia an employee can be fired for good cause, bad cause, or no cause.

Obviously, today's ruling concerns a substantive and not a procedural rule. Certainly this is a radical decision that departs from prior law and it involves a substantial public issue that represents a clear depar-

ture from prior precedent. Finally, although other states have outlawed polygraph examinations this subject is handled by the legislatures and, in many states, it is not handled at all.