IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

**FILED**
**April 9, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0432


REBUILD AMERICA, INC. and REO AMERICA, INC.,
Defendants Below, Petitioners

v.

MARK E. DAVIS and TAMMY L. DAVIS, Plaintiffs Below;
MIKE RUTHERFORD, Sheriff of Kanawha County and
VERA MCCORMICK, Clerk of the County Commission of Kanawha County,
Defendants Below;
and HUNTINGTON NATIONAL BANK, N. A.,
Intervenor Below, Respondents

---

Appeal from the Circuit Court of Kanawha County
The Honorable Carrie L. Webster, Judge
Case No. 08-C-1058

AFFIRMED

---

Submitted: March 11, 2015
Filed: April 9, 2015

James W. Lane, Jr., Esq.
William J. Hanna, Esq.
Flaherty Sensabaugh Bonasso, PLLC
Charleston, West Virginia
Attorneys for Rebuild America, Inc.
And REO America, Inc.

Philip B. Hereford, Esq.
Hereford & Riccardi, PLLC
Charleston, West Virginia
and
Christopher S. Smith, Esq.
Hoyer, Hoyer & Smith, PLLC
Charleston, West Virginia
Attorneys for Huntington National Bank


CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE DAVIS, deeming herself disqualified, did not participate in the decision of this case.
SENIOR STATUS JUSTICE MCHUGH, sitting by temporary assignment.

SYLLABUS BY THE COURT

1.     "A circuit court's entry of summary judgment is reviewed *de novo*."

Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).


2.     The acts required under West Virginia Code § 11A-3-2(a) and (b)

(2007) (Repl. Vol. 2010) constitute acts in enforcement of a lien against property and,

where there exists an automatic stay pursuant to the provisions of 11 U.S.C. § 362, such

acts are violative of the stay.


3.     Acts taken in violation of the automatic stay provisions of 11 U.S.C.

§ 362 (2010) are void *ab initio*.

WORKMAN, Chief Justice:

This is an appeal from the circuit court's order granting summary judgment in favor of respondent/intervenor below, Huntington National Bank (hereinafter "Huntington"), declaring a tax deed issued to petitioner/defendant below, Rebuild America, Inc. (hereinafter "Rebuild") to be void. The circuit court found that the issuance of two statutory notices of delinquency while the property owners (hereinafter "the Davises"[1]) were under the protection of a bankruptcy stay voided the tax deed.[2]

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we conclude that the existence of the bankruptcy stay rendered the statutory notices void *ab initio* and therefore, the tax lien sale was lacking in substantial compliance with the required statutory procedure. Accordingly, we agree that the tax deed must be set aside and therefore affirm the order of the circuit court.

---

[1] Neither Mark E. Davis and Tammy L. Davis, plaintiffs below, nor Mike Rutherford and Vera McCormick, defendants below, filed a brief in this appeal.

[2] This order was entered on remand following this Court's opinion in *Rebuild America, Inc. v. Davis*, 229 W. Va. 86, 726 S.E.2d 396 (2012) (hereinafter "*Rebuild I*").

1

## I. FACTS AND PROCEDURAL HISTORY

This is the second time this Court has been presented with this case; as such, the facts will not be exhaustively reiterated. As we set forth in detail in *Rebuild I*, the Davises owned property located at 51 Woodbridge Drive, Charleston, West Virginia; the property secured a credit line deed of trust held by Huntington. The Davises failed to pay their 2005 and 2006 real property taxes, resulting in a notice of delinquency being published in the newspaper on May 11, 2006, pursuant to West Virginia Code §§ 11A-2-11 and -13 (Repl. Vol. 2010).

On July 12, 2006, the Davises filed a petition for Chapter 7 bankruptcy in the United States District Court for the Southern District of West Virginia, initiating an automatic stay pursuant to 11 U.S.C. § 362 (2010). Thereafter, on September 13, 2006, a second notice of delinquency was published in the newspaper advising that the tax lien would be sold on November 14, 2006,[3] as required by West Virginia Code § 11A-3-2(a) (2007) (Repl. Vol. 2010). On October 13, 2006, pursuant to West Virginia Code § 11A-3-2(b), a notice of the tax lien sale was mailed to the Davises at their last known address, but was returned undeliverable. On October 17, 2006, the Davises received a discharge in bankruptcy and the bankruptcy was case closed, terminating the automatic stay. 11 U.S.C. § 362(c). The tax lien was sold by the sheriff on November 14, 2006, to Sass Muni, which lien was later assigned to Rebuild.

---

[3] This date is presumed inasmuch as the actual newspaper publication was not included in the record; this is the date that the tax lien was actually sold.

Statutory notices to redeem were purportedly thereafter sent to the Davises and Huntington noting that a tax deed would be issued after April 1, 2008, unless the property was redeemed by payment of the taxes, interest, and charges due.[4]  No party redeemed the property; therefore, a tax deed was issued to Rebuild on April 14, 2008.

The Davises filed the instant action on June 2, 2008, *pro se*.  The circuit court granted the Davises' motion to set aside the tax sale, finding that because of the Davises' bankruptcy and failure to receive proper notices, the deed should be set aside and the property "restored" to the Davises.  Rebuild appealed to this Court, which reversed and remanded, finding that the circuit court's focus on the Davises' failure to *receive* the pre-tax sale notices was immaterial to an action to set aside a tax deed.  The Court further found that there was an insufficient record on the existence and effect of the bankruptcy stay, as well as whether the Davises had received the post-sale notices to redeem.  This Court remanded for further development and ruling on these issues.

On remand, Huntington moved for summary judgment arguing that the bankruptcy stay in effect during the publication of the second delinquency notice in the paper and the issuance of the letter notifying the Davises of the impending tax lien sale voided those actions and therefore, the tax deed.  Huntington relied heavily on testimony

---

[4] Because the circuit court determined that the bankruptcy stay voided the tax deed, it did not address the post-sale notices to redeem as directed by this Court on remand.

from the Kanawha County Sheriff's Office's Chief Tax Deputy who testified that the Sheriff's office improperly failed to code the Davises' property as being in bankruptcy, which should have halted the proceedings.[5] Rebuild argued that the delinquency notice and letter did not violate the provisions of the automatic stay, merely preserved the tax sale proceeding, and/or fell into an exception for transactions to which the stay did not apply. Rebuild further argued that *Rebuild I* stood for the proposition that any irregularities with the pre-sale notices were inconsequential to the validity of the tax deed. Nevertheless, the circuit court found that "actions taken in violation of the automatic stay are void *ab initio*" and that as a necessary and integral part of the tax sale process, the sale must be set aside as "jurisdictionally defective." The circuit court gave the Davises or Huntington thirty days to repay the redemption amount, interim taxes, and interest to Rebuild. This appeal followed.

## II. STANDARD OF REVIEW

It is well-established that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). With this standard in mind, we proceed to Rebuild's arguments.

---

[5] The Deputy, Allen Bleigh, testified that the office properly coded rental property owned by the Davises as being in bankruptcy by denominating it "BR7" but failed to likewise code the Woodbridge property. The Deputy was unequivocal in his testimony that the Sheriff's office had made an error and that had it been properly coded, all action on the tax lien sale would have ceased.

4

# III. DISCUSSION

This case presents the very narrow issue of whether notices issued pursuant to West Virginia Code § 11A-3-2 violate the bankruptcy court's automatic stay.[6] Critically, we note that the statutory tax sale process was not initiated during the stay, nor was the sale of the tax lien itself conducted during the stay. Therefore, this case deals only with the effect of the bankruptcy stay on the delinquency notice published in the newspaper and the notice mailed to the Davises pursuant to West Virginia Code § 11A-3-2(a) and (b), respectively.[7] To the extent the bankruptcy stay had an effect on those notices, this Court must then determine the resulting effect on the tax deed.

---

[6] With respect to this Court's jurisdiction to determine the applicability of the automatic stay, "courts have uniformly held that when a party seeks to commence or continue proceedings in one court against a debtor or property that is protected by the stay automatically imposed upon the filing of a bankruptcy petition, the non-bankruptcy court properly responds to the filing by determining whether the automatic stay applies to (*i.e.,* stays) the proceedings." *Chao v. Hosp. Staffing Servs., Inc.,* 270 F.3d 374, 384 (6th Cir. 2001); *see In re Baldwin–United Corp. Litig*., 765 F.2d 343, 347 (2d Cir. 1985) ("Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending . . . and the bankruptcy court[.]"); *In re: United Imports Corp.,* 200 B. R. 234 (Bankr. D. Neb. 1996) ("[O]ther district courts retain jurisdiction to determine the applicability of the stay to litigation pending before them[.]").

[7] West Virginia Code § 11A-3-2(a) requires the Sheriff to publish a list of delinquent lands in the newspaper, as follows:

> On or before the tenth day of September of each year, the sheriff shall prepare a second list of delinquent lands, which shall include all real estate in his or her county remaining delinquent as of the first day of September, together with a notice of sale . . . . The sheriff shall publish the list and notice

(continued . . .)

5

11 U.S.C. § 362(a) provides that the filing of a petition in bankruptcy:

operates as a stay, applicable to all entities, of—

(1) The commencement or *continuation*, including the issuance or employment of process, of a judicial, administrative, or other *action or proceeding against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\*\*\*

---

prior to the sale date fixed in the notice as a Class III-0 legal advertisement in compliance with the provisions of article three, [§§ 59-3-1 et seq.] chapter fifty-nine of this code, and the publication area for such publication shall be the county.

Subsection (b) provides for notification of the delinquency and sale to a list of enumerated persons, via certified mail, as follows:

In addition to such publication, no less than thirty days prior to the sale, the sheriff shall send a notice of the delinquency and the date of sale by certified mail: (1) To the last known address of each person listed in the land books whose taxes are delinquent; (2) to each person having a lien on real property upon which the taxes are due as disclosed by a statement filed with the sheriff pursuant to the provisions of section three [§ 11A-3-3] of this article; (3) to each other person with an interest in the property or with a fiduciary relationship to a person with an interest in the property who has in writing delivered to the sheriff on a form prescribed by the Tax Commissioner a request for such notice of delinquency; and (4) in the case of property which includes a mineral interest but does not include an interest in the surface other than an interest for the purpose of developing the minerals, to each person who has in writing delivered to the sheriff, on a form prescribed by the Tax Commissioner, a request for such notice which identifies the person as an owner of an interest in the surface of real property that is included in the boundaries of such property[.]

(3) Any act to obtain possession of property of the estate or of property from the estate or to *exercise control over property of the estate*;

(4) Any act to create, perfect, or *enforce* any lien against property of the estate;

(5) Any act to create, perfect, or *enforce* against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) Any act to collect, assess, or *recover* a claim against the debtor that arose before the commencement of the case under this title;

(emphasis added). The primary purpose of the automatic stay "is to give the debtor a breathing spell from his creditors" and to "stop all collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and her creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *In re Roach*, 600 F.2d 1316, 1318 (9th Cir. 1981); *Zeoli v. RIHT Mortgage Corp.* 148 B. R. 698, 700 (D.N.H. 1993). Moreover, in its 1973 report, the Commission on the Bankruptcy Laws of the United States specifically noted its "frustration with the 'dismember[ing] of estates by the foreclosures of liens instituted before the filing of a petition in bankruptcy.'" *Zeoli,* 148 B.R. at 699. Rebuild makes four arguments in support of its contention that the bankruptcy stay does not serve to void the tax deed as the circuit court determined. We will address each in turn.

7

A. **Inapplicability of 11 U.S.C. § 362(a)**

While the statutory tax lien sale at issue ostensibly implicates each of the provisions of § 362(a) delineated above, the parties focus their attention on subsection (a)(4), forbidding "[a]ny act to create, perfect, or *enforce* any lien against property of the estate[.]" (emphasis added).[8] Rebuild argues that the tax sale was not an attempt to "enforce" the tax lien because the tax lien sale was merely a "transfer" of the lien to a third party. In support of this argument, Rebuild correctly notes that the sale of a tax lien transfers *only* the lien held by the Sheriff, not the property itself. Rebuild relies on an oft-cited decision from the Middle District of Georgia, which holds that

> the automatic stay provisions of the Bankruptcy Code do not prohibit a creditor of a debtor from transferring any interest or claim it might have against the debtor's bankruptcy estate to a third party. Such a transfer merely substitutes the party that holds the interest or claim against the debtor's bankruptcy estate, and such transfer does not serve to increase or decrease the interest or claim the party asserts against the debtor's bankruptcy estate.

*In re: Georgia Steel, Inc*., 71 B. R. 903, 909 (Bankr. M.D. Ga. 1987). Rebuild notes that it is only after the property is unredeemed that title to the property transfers to the lien purchaser, which it contends is the actual act of "enforcement." As noted above, in opposition, Huntington relies heavily on the testimony of the Tax Deputy who admitted that the Sheriff's office improperly failed to code the Davises' property as being in

---

[8] There is little question that the acts of the Sheriff were not an attempt to create or perfect the lien; the lien was created and attached to the property on July 1, 2004. W. Va. Code § 11A-1-2 (Repl. Vol. 2010).

8

bankruptcy and that if it had been properly coded, all actions related to the sale would have ceased.[9]

While it is undisputed that the tax lien sale merely transfers the tax lien, we find it difficult to characterize the initiation and execution of the statutory tax sale procedure outlined in West Virginia Code § 11A-3-1 *et seq*. as anything other than an act to "enforce" the tax lien. Albeit a process, it is still an attempt to collect the taxes due under the lien. Rebuild's invocation of the rule articulated in *Georgia Steel* would be compelling were the sale of the tax lien not a step in a process of enforcement which ultimately results in the onus being placed upon the debtor to redeem. A tax sale is not a simple assignment or transfer of a lien that has no further effect. *See In re Barton,* 359 B. R. 681, 689 (Bankr. N.D. Ill. 2006) ("[A] tax sale is a step in the enforcement process."); *In re Young*, 14 B. R. 809, 311 (Bankr. N.D. Ill. 1981) ("'Tax sales have as their purpose coercion of negligent and unwilling citizens to pay their taxes.' The sale of debtors' real property for the nonpayment of delinquent taxes is the exact type of creditor action § 362

---

[9] Rebuild argues that the opinion of the Tax Deputy is irrelevant to this issue of law. We agree. The Sheriff's policy of terminating all activity when a property is in bankruptcy is not germane to the narrow issue of whether the notices at issue are violative of the stay; this is a pure question of law. The Sheriff's policy is undoubtedly in place to avoid inadvertently performing any acts that would plainly be in violation of the stay, such as issuing a tax deed and therefore divesting the bankruptcy estate of the property. Obviously, although the tax lien sale did not in this instance occur during the stay, the Sheriff's office does not know how long a bankruptcy may actually remain pending and therefore undoubtedly terminates tax sale activity to avoid any *potential* interference with the bankruptcy estate, not necessarily because *all* of its associated activities violate the stay as a matter of law.

9

(a) stays." (citations omitted)). Therefore, we conclude that the statutory notices plainly implicate the automatic stay.

## B. Applicability of 11 U.S.C. § 362(b)(24)

Rebuild next argues that, even if the language of 11 U.S.C. § 362 which creates the stay appears to apply to the statutory process at issue, an exception contained in 11 U.S.C. § 362(b)(24) removes the notices from operation of the stay. 11 U.S.C. § 362(b)(24) provides that the filing of a petition in bankruptcy does not operate as a stay "of any transfer that is not avoidable under section 544 and that is not avoidable under section 549[.]" In essence, Sections 544 and 549 empower the bankruptcy trustee to "avoid" or nullify transfers of estate property that occur for a certain period of time before the bankruptcy and during the bankruptcy, respectively. Rebuild argues that both Section 544 and 549 empower the trustee only to avoid "transfer[s] of property of the debtor" or "transfer[s] of property of the estate," respectively. Simply put, Rebuild maintains that since the tax lien was not property of the Davises or the Davises' estate— rather, the lien belonged to the Sheriff—that it was not a transfer "avoidable" by the trustee. 11 U.S.C. § 362(b)(24) establishes that if a transfer is not avoidable by the trustee, it is not subject to the stay.

We find this exception to the automatic stay inapplicable to the instant case. There is no "transfer" of property—the estate's or otherwise—that occurred within the stay at all such as to implicate this exception; the tax lien sale occurred *after* the stay was

10

extinguished.[10] Therefore, this exception does nothing to resolve the issue of whether the *notices*—administrative steps in the tax sale process—violated the stay. *See Bascom Corp. v. Chase Manhattan Bank,* 832 A.2d 956, 961 (N. J. Super. Ct. App. Div. 2003) (noting that final judgment of foreclosure was entered after stay was extinguished and that [w]hat was void was . . . the only action in the proceeding that occurred while the stay was in effect.").

## C. Preservation of the "Status Quo"

Rebuild next argues that the notices themselves did not affect the Davises or the bankruptcy estate, but merely maintained the status quo as to the statutory procedure employed: "The automatic stay, though broad, does not preclude all post-petition activity. Actions taken that tend to maintain the status quo are not as likely to be found to violate the automatic stay provision of § 362." *In re Atlas Machine & Iron Works, Inc.*, 239 B. R. 322, 330 (Bankr. E.D. Va. 1998) (citations omitted).

In support of this argument, Rebuild cites a litany of cases which generally hold that notices of postponement of mortgage foreclosure sales do not violate the stay. *See Roach*, 660 F.2d at 1318 ("Postponement notices which specify a new sale date do

---

[10] Rebuild appears to recognize the inapplicability of this provision for precisely this reason. In its brief, Rebuild concludes its argument by stating that "the sale of the tax lien qualifies as an exception from the automatic stay and *all events associated with the tax sale* did not [violate] the automatic stay." (emphasis added). Presumably the "events associated with the tax sale" to which Rebuild refers are the notices at issue. Rebuild provides no support for the argument that "associated" events which occur during the stay do not violate the stay themselves.

11

not violate 11 U.S.C. § 362."); *Taylor v. Slick*, 178 F.3d 698 (3d Cir. 1999) (same); *In re: Fine*, 285 B. R. 700 (Bankr. D. Minn. 2002) (same); *Zeoli,* 148 B. R. 698 (same). In each of these cases, the bank initiated foreclosure proceedings but sought to postpone the sale itself and filed notices of postponement during the stay. Courts addressing the effect of these postponements have uniformly held that such acts do not violate the stay.

In *Zeoli*, the court reasoned that notices of postponement of foreclosure were not acts in "continuation" of a proceeding as forbidden by § 362(a)(1), but "[r]ather, [are] more appropriately characterized as an act *in preservation* of a stayed proceeding." 148 B. R. at 701. The court explained that "[t]ime does not stand still for legal processes" and that the passage of time would have "entirely expunged the stayed foreclosure proceeding, thereby disrupting the status quo to the economic detriment of RIHT, while conferring no discernable benefit on the debtor." *Id.* The court observed that the postponement "preserved the existing relationship between the parties, protected its legitimate interests, and imposed no burden on the debtor." *Id.*

We agree that the notices themselves had no appreciable effect on the bankruptcy estate itself and served to maintain the statutory procedure initiated pre-petition. However, as both the *Atlas* and *Zeoli* courts noted, the "status quo" is not maintained when the actions taken post-petition actually *advance* the proceeding. *See Atlas*, 239 B. R. at 332 (distinguishing case where "the creditor was . . . acting in furtherance to enforce a lien against the property of the estate."); *Zeoli*, 148 B.R. at 700,

12

n.2 and 701 (contrasting postponement with "initially scheduling" a sheriff's sale post-petition and finding that mere postponement does not "harass[], or revive[] the financial pressures that drove the debtor into bankruptcy"). *See also Taylor*, 178 F.3d at 702 ("[T]he filing of a bankruptcy petition prohibits the beginning ('commencement') of a judicial proceeding and the carrying forward ('continuation') of a proceeding that has already begun.").

West Virginia Code § 11A-3-1 *et seq*. (2010 Repl. Vol.) was specifically enacted "[t]o provide for the speedy and expeditious enforcement of the tax claims of the state and its subdivisions" and to "provide for the transfer of delinquent and nonentered lands to those more responsible to, or better able to bear, the duties of citizenship than were the former owners[.]" West Virginia Code § 11A-3-2(a) and (b) are the first steps in this process. Subsection (a) provides for publication of a list of delinquent lands and notice of sale to the county at large. *See* n.7, *supra*. Subsection (b) provides for notice via certified mail to a set of enumerated interested persons of the delinquency and impending sale. *Id.*

Therefore, we find the notices at issue herein do not merely maintain the status quo; rather, they advance the tax lien enforcement procedures outlined in West Virginia Code § 11A-3-1 *et seq*. Once a tax lien sale is initiated under our statutes, each step in the statutory process brings the debtor closer to potential loss of his or her property unless he or she redeems the property in the amount of the taxes due. As

13

previously noted, the purpose of a tax sale is provide impetus for citizens to pay their taxes. Without question, institution and *continuation* of this statutory procedure "revives the financial pressure that drove the debtor into bankruptcy" and interferes with the "breathing spell" from creditors, all of which the automatic stay was designed to prevent. *Zeoli*, 148 B. R. at 701; *Roach*, 660 F.2d at 1318. Unlike the foreclosure postponement notices discussed by Rebuild, the statutory notices at issue do not simply hold the tax lien sale in limbo. Rather, the notices are evidence that the lien enforcement process marches forward with the end result being payment of the taxes, redemption, or transfer of the property.

The affirmative nature of the integral steps in the foreclosure or tax sale processes has been observed by other courts, which have found such acts to be violative of the automatic stay. In *In re Ring*, 178 B. R. 570, 574 (Bankr. S.D. Ga. 1995), the United States Bankruptcy Court for the Southern District of Georgia held that the initiation of foreclosure proceedings post-Chapter 7 filing violated the stay: "Advertising for foreclosure is clearly the sort of creditor action that is stayed by sections 362(a)(1), (3), (4) and (5)." Likewise, in *In re Demp,* 23 B. R. 239 (Bankr. E.D. Pa. 1982), the bankruptcy court held that posting property for Sheriff's sale after notice of a bankruptcy petition was a violation of the stay. *See also In re Kane*, 248 B.R. 216 (B.A.P. 1st Cir. 2000) ("[W]hatever procedural requirements are imposed by Maine statutes, the effect of the Notice was perfection of a lien against property of the estate which arose before the commencement of the case, and hence violated the automatic stay."); *In re Derringer,*

14

375 B. R. 903 (B.A.P. 10th Cir. 2007) (distinguishing "postponement" of foreclosure sale and holding that "[w]hen a foreclosure sale is *initially* scheduled postpetition, case law holds that actions in furtherance of the foreclosure sale are violations of the automatic stay."); *Atlas*, 239 B.R. at 332 (setting sale date post-petition was not maintaining status quo "but acting in furtherance to enforce a lien against property of the estate."); *McKeen v. Fed. Deposit Ins. Corp.*, 549 S.E.2d 104, 106 (Ga. 2001) ("Filing a notice of levy and advertising the property for sale are actions that are clearly stayed during the pendency of a bankruptcy."); Therefore, we hold that the acts required under West Virginia Code § 11A-3-2(a) and (b) constitute acts in enforcement of a lien against property and, where there exists an automatic stay pursuant to the provisions of 11 U.S.C. § 362, such acts are violative of the stay.

Furthermore, it is widely held that acts taken in violation of a bankruptcy say are void *ab initio:* "Actions taken in violation of the stay are void and without effect." 2 Collier on Bankruptcy, § 362.11 (15th Ed. 1979); *see also Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 204 W.Va. 465, 487, 513 S.E.2d 692, 714 (1998) (Davis, J., dissenting) ("In general, acts taken in violation of the automatic stay are void and without legal effect." (citing *Kalb v. Feuerstein*, 308 U.S. 433 (1940))). As noted by the United States District Court for the Southern District of West Virginia, "[t]he majority of circuits hold that a violation of the automatic stay is generally void as a matter of law." *Ellison v. Comm'r of Internal Revenue Serv.*, 385 B. R. 158, 163 (S.D. W. Va. 2008) (collecting cases from First, Second, Third, Seventh, Ninth, Tenth, and

15

Eleventh Circuits). There is, however, a small minority of jurisdictions that find such acts merely "voidable." As astutely observed by the *Ellison* court, "[c]haracterizing an act as 'void' or 'voidable' has the practical effect of determining which party bears the burden of going forward." *Id*. at 162.

We agree that finding acts violative of the stay merely voidable "diminishes the benefits of the automatic stay by placing an additional burden on a debtor in bankruptcy. . . . [A] debtor's time and money are better spent reorganizing their finances, rather than prosecuting litigation on the validity of acts violating the automatic stay." *Id*. at 165. Therefore, we further hold that acts taken in violation of the automatic stay provisions of 11 U.S.C. § 362 are void *ab initio*.

### D. Applicability of the Court's holding in *Rebuild I*

Having determined that the bankruptcy stay served to render the West Virginia Code § 11A-3-2 notices void *ab initio*, we must now assess the effect of this determination on the validity of the tax deed. *See Bascom Corp.* 832 A.2d at 961 ("[S]ince foreclosure law is a matter uniquely within the state's competence, the state is free to make its own determination as to the effect of the entry of a void interlocutory order irrespective of the reason it is void."). Rebuild contends that even if the notices are found to have violated the automatic stay, this Court's opinion in *Rebuild I* holds that such invalidity is of no consequence to the subsequent tax lien sale and tax deed.

16

In Syllabus Point 1 of *Rebuild I*, this Court held that

[a] tax deed is not invalidated on the basis that a person or entity failed to *receive* notice of the tax lien sale required by *W. Va. Code*, 11A-3-2 [2007], where it is proven that: (1) the subsequent redemption notice required by *W. Va. Code*, 11A-3-21 [2010], was served on all persons and entities entitled to notice, (2) service of the notice to redeem was perfected in the manner required by *W. Va. Code*, 11A-3-22 [2010], (3) the property was not redeemed within the time period set out in the redemption notice, and (4) a tax deed, meeting the requirements of *W. Va. Code*, 11A-3-27 [2010], was delivered to the tax lien purchaser or assignee thereof.

(emphasis added). The Court cited to West Virginia Code § 11A-3-2(b) which provides that "'[i]n no event shall failure to receive the mailed notice by the landowner or lienholder affect the validity of the title of the property conveyed . . .'" 229 W. Va. at 93, 726 S.E.2d at 403. Based upon this statutory declaration, this Court held that it is plain that the Legislature intended that a mere failure to receive the pre-redemption notices would not invalidate a sale. *Id.*

Rebuild argues that even if the West Virginia Code § 11A-3-2 notices were invalidated by the bankruptcy stay, this Court's holding in *Rebuild I* indicates that such invalidation is immaterial to the validity of the tax deed as only the post-sale redemption notices are pertinent.[11] However, a more careful reading of *Rebuild I* reveals that the Court's holding—and the language of the statute itself—is limited to the property

---

[11] Because the circuit court's decision was not based on, nor included an analysis of, the post-tax lien sale redemption notices, this opinion does not reach those issues and should not be read as affecting our body of caselaw regarding post-sale redemption notices. *See* n.4, *supra*.

17

owner's failure to *receive* the pre-sale notices, not the failure to issue them in the first instance. The Legislature plainly intended that a property owner simply cannot claim that he did not receive the pre-tax sale notices in order to invalidate the sale; this is obviously to preclude homeowners from self-servingly claiming they failed to receive the notice and disrupting an otherwise valid tax sale.

Accordingly, it is plain that *Rebuild I* holds that to the extent a homeowner claims not to have *received* the notices, such lack of receipt is insufficient to invalidate a tax sale. However, the *failure to issue the notices at all* and comply with statutory procedure must necessarily invalidate the tax deed. Since the notices are rendered void *ab initio* due to the bankruptcy stay, the notices simply did not occur. There can be no sale of a tax lien if there was no notice of the tax lien sale issued. We therefore find that the failure to comply with the statutory tax lien sale procedures contained in West Virginia Code § 11A-3-1 *et seq.* requires the tax deed issued in this matter to be set aside.

## IV. CONCLUSION

For the reasons set forth hereinabove, we affirm the March 20, 2014, order of the circuit court.

Affirmed.

18