IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 20-0040
_____

FILED
November 9, 2023
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

TODD JARRELL,
Plaintiff Below, Petitioner,

V.

FRONTIER WEST VIRGINIA, INC.;
DANIEL JORDAN; AND MICHAEL LINKOUS,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Jackson County
The Honorable Lora A. Dyer, Judge
Civil Action No. 19-C-31

AFFIRMED
_____

Submitted: October 10, 2023
Filed: November 9, 2023

Walt Auvil, Esq.                        Richard M. Wallace, Esq.
Kirk Auvil, Esq.                        Kameron T. Miller, Esq.
The Employment Law Center, PLLC          Littler Mendelson
Parkersburg, West Virginia               Charleston, West Virginia
Attorneys for Petitioner                 Attorneys for Respondents

JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE HUTCHISON AND JUSTICE WOOTON dissent and reserve the right to file separate opinions.

**SYLLABUS BY THE COURT**

1.      "The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy princip[le], then the employer may be liable to the employee for damages occasioned by this discharge." Syllabus, *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978).

2.      "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person." Syllabus point 3, *Birthisel v. Tri-Cities Health Services Corp.*, 188 W. Va. 371, 424 S.E.2d 606 (1992).

3.      "Ordinarily the courts will not decide on public policy grounds issues which are fairly debatable, but will instead leave them for legislative decision." Syllabus point 3, *Yoho v. Triangle PWC, Inc.*, 175 W. Va. 556, 336 S.E.2d 204 (1985).

4.      West Virginia Code § 61-3-49b (eff. 2012) does not establish a substantial public policy exception to the at-will employment doctrine pursuant to *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978).

**BUNN, Justice:**

Petitioner Todd Jarrell appeals from an order entered December 23, 2019, by the Circuit Court of Jackson County that dismissed his wrongful discharge claim[1] against Respondents Frontier West Virginia, Inc.; Daniel Jordan; and Michael Linkous (collectively "Frontier"). Mr. Jarrell alleged in his complaint that Frontier and its supervisory employees, Mr. Jordan and Mr. Linkous, wrongfully discharged him after he reported conduct by other Frontier employees that he alleged violated West Virginia Code § 61-3-49b (eff. 2012).[2] Mr. Jarrell contends that because § 61-3-49b criminalizes disruption of communications or public utility services, the statute establishes a substantial public policy to support his wrongful discharge claim. Frontier argues that Mr. Jarrell has failed to state a valid claim for relief in his complaint because § 61-3-49b is not a source of substantial public policy that would constitute an exception to the at-will employment doctrine. For the reasons set forth below, we conclude that West Virginia Code § 61-3-49b does not set forth a substantial public policy to support an employee's claim of wrongful discharge following his termination from at-will employment. The Legislature, through its enactment of § 61-3-49b, has recognized a crime against property, and harm to the public is not required to prove this offense occurred. Therefore, we affirm the circuit court's

---

[1] Mr. Jarrell bases his wrongful discharge claim on our holding in the Syllabus of *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978), quoted in Section I, *infra*.

[2] The text of West Virginia Code § 61-3-49b (eff. 2012) is quoted in Section I, *infra*.

December 23, 2019 order dismissing Mr. Jarrell's complaint for failure to state a cognizable claim.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Jarrell was a longtime cable technician for various telecommunications companies and had worked for Frontier for approximately eight years when Frontier terminated his employment. On April 24, 2019, he filed a complaint alleging that Frontier wrongfully discharged him.[3] Mr. Jarrell alleged that, during his employment, he became aware that several coworkers committed acts that amounted to sabotage of Frontier's equipment and disrupted service for Frontier's customers. Such conduct, if proven, would be a misdemeanor (for the first offense) or a felony (for the second and subsequent offenses) under West Virginia Code § 61-3-49b,[4] which provides:

---

[3] Because this case is an appeal from the circuit court's order dismissing Mr. Jarrell's complaint upon Frontier's Rule 12(b)(6) motion to dismiss, we construe "the complaint . . . in the light most favorable to [the] plaintiff, and its allegations are to be taken as true." *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 605, 245 S.E.2d 157, 158 (1978). *Accord Murphy v. Smallridge*, 196 W. Va. 35, 36, 468 S.E.2d 167, 168 (1996) (directing that, on Rule 12(b)(6) motion to dismiss, court "constru[es] the factual allegations in the light most favorable to the plaintiff[]" (citation omitted)).

[4] During the proceedings below and on appeal to this Court, Mr. Jarrell repeatedly references West Virginia Code § 61-3-49(b), which imposes various requirements on scrap metal purchasers, rather than West Virginia Code § 61-3-49b, which criminalizes the disruption of communications and public utility services and upon which he relies to support his substantial public policy argument. The circuit court characterized the references to § 61-3-49(b) as a clerical error, and we agree with that assessment because the statutory language Mr. Jarrell quotes in conjunction with these errant cites clarifies the statute to which he is referring.

(a) Any person who causes a disruption of communications services or public utility services by the theft or by intentionally damaging communications or public utility equipment and by such conduct causes:

(1) a disruption of communication services or public utility services to ten or more households or subscribers; or

(2) a loss in the value of the property in an amount of one thousand dollars or more, shall be guilty of a misdemeanor and, upon conviction thereof, for a first offense, shall be sentenced to not more than two thousand hours of court-approved community service or fined not more than $10,000, or both. For a second offense, the person is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than one nor more than five years or fined not more than $10,000, or both. For third and subsequent offenses, the person is guilty of a felony and, upon conviction thereof, shall be imprisoned in a correctional facility for not less than one nor more than ten years, or fined not more than $10,000, or both.

(b) As used in this section, communications and public utility equipment includes but is not limited to public safety communications towers and equipment, telephone lines, communications towers and tower equipment, radio towers and tower equipment, railroad and other industrial safety communication devices or systems, electric towers and equipment and electric transmission and distribution lines.

*Id.*

Mr. Jarrell alleged that his coworkers intentionally tampered with Frontier's equipment so that Frontier's communication service to customers would be disrupted. Mr. Jarrell claims the coworkers took these actions to earn overtime pay when they were called out to repair the damage they caused. Mr. Jarrell stated that his coworkers' actions in tampering with Frontier's equipment resulted in at least two Frontier customers' inability

3

to reach emergency medical services during a service outage, and that one of the customers ultimately died after medical complications. When Mr. Jarrell first reported this alleged misconduct to his supervisor, Mr. Jordan,[5] Frontier did not take any action against the coworkers; then, Frontier scheduled Mr. Jarrell for reassignment to a different service area, but Mr. Linkous[6] canceled the transfer. Thereafter, several of the coworkers Mr. Jarrell identified as having caused or contributed to service outages were transferred to other service areas. It appears Mr. Jarrell made his final reports of this alleged misconduct in the fall of 2017.

The following spring, Frontier suspended Mr. Jarrell, who had had no prior disciplinary record, from work for five days for calling in to work late. Mr. Jarrell's union filed a grievance on his behalf, which was ultimately denied. A short time later, Frontier asked Mr. Jarrell to submit to a random drug test because Frontier suspected he had been using illicit substances several months earlier.[7] Mr. Jarrell's union also filed a grievance on his behalf to challenge the drug test because no other employees in Mr. Jarrell's position

---

[5] The appendix record identifies Mr. Jordan as a Local Manager for Frontier.

[6] At the time of Mr. Jarrell's discharge, Mr. Linkous was Frontier's Assistant Vice President of Human Resources.

[7] The circumstances giving rise to Frontier's suspicion that Mr. Jarrell was under the influence of unspecified substances are not apparent from the record. Mr. Jarrell contends that the testing was based upon his suspected prior use of substances because the test administered could detect substances used within the preceding four months.

had been drug tested; this grievance was noted as closed with an "unsatisfactory" disposition.

Finally, in September 2018, Mr. Jarrell used a Frontier bucket truck to remove bats from his home. When he removed the truck from Frontier's premises, he parked his personal vehicle in the truck's parking place, which he claims was a customary practice when Frontier employees used the company's vehicles; nevertheless, Frontier reported the truck as stolen to local law enforcement authorities. Although Mr. Jarrell claims that other Frontier employees had been permitted to use the company's trucks for non-company purposes, it appears that those uses had all been preapproved by Frontier. Mr. Jarrell claims that he did not seek permission to use the bucket truck to remediate his bat infestation because he did not think he would receive permission to use it. Ultimately, Frontier terminated Mr. Jarrell's employment on October 22, 2018, after his unauthorized use of Frontier's bucket truck. Mr. Jarrell filed a third grievance to protest his termination; Frontier denied this grievance based upon its assertion of "just cause" to support Mr. Jarrell's discharge from employment.

Mr. Jarrell then filed the underlying suit against Frontier for retaliatory discharge claiming that he had been wrongfully terminated for reporting the alleged misconduct of his coworkers and that the reasons cited by Frontier—suspension for calling in to work late, failed drug test, and unauthorized use of company bucket truck—were mere pretextual reasons for his firing. Mr. Jarrell bases his claim for wrongful discharge on the

5

Syllabus of *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978), which holds

> [t]he rule that an employer has an absolute right to discharge an at will[8] employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy princip[le], then the employer may be liable to the employee for damages occasioned by this discharge.

*Id.* Frontier responded by moving to dismiss Mr. Jarrell's complaint for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.[9] In an order dated December 23, 2019, the circuit court granted Frontier's motion to dismiss. The circuit court ruled that Mr. Jarrell "failed to allege a substantial public policy supporting a wrongful discharge exception to a non-public employer terminating an employee." The court also found that Mr. Jarrell's "Complaint acknowledges Frontier had other bases on which to terminate [Mr. Jarrell], including the unauthorized use of . . . Frontier's bucket truck." Finally, the circuit court determined that it must follow this Court's prior precedents recognizing that

> criminal statutes alone do not constitute substantial public policy under *Harless* and its progeny "to protect an employee of a non-public employer who reported suspected criminal conduct to the appropriate authority and claims to have been

---

[8] We have explained the at will employment doctrine as follows: "Under long-standing West Virginia law, employees are considered to be employed at will, meaning that absent a contract or statute to the contrary, they serve at the will and pleasure of their employer and can be discharged at any time, with or without cause." *Blanda v. Martin & Seibert, L.C.*, 242 W. Va. 552, 556, 836 S.E.2d 519, 523 (2019) (footnote omitted).

[9] Rule 12(b)(6) is discussed in Section III, *infra*.

retaliated against as a result." *Blanda* [*v. Martin & Seibert, L.C.*, 242 W. Va. 552, 562, 836 S.E.2d 519, 529 (2019)]. Since [Mr. Jarrell's] entire theory is based on [his] alleged reporting of alleged unlawful activity, [Mr. Jarrell] asserts no facts supporting a viable cause of action for a *Harless* claim of wrongful discharge.

Mr. Jarrell then appealed to this Court, but his appeal was stayed during the pendency of Frontier's bankruptcy case.[10] The bankruptcy stay has now been lifted following the conclusion of those proceedings.

## II.

## STANDARD OF REVIEW

In the order on appeal, the circuit court granted Frontier's motion to dismiss Mr. Jarrell's complaint for failure to state a claim upon which relief could be granted. We apply a plenary standard of review to such a ruling: "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). Mr. Jarrell also argues that a statute supports his wrongful discharge claim because it provides a source of substantial public policy. This issue requires us to consider the relevant statutory language and to determine whether the Legislature intended that language to embody substantial public policy. The resolution of both inquiries is also subject to our plenary

---

[10] *See generally* 11 U.S.C. § 362 (automatically staying judicial proceedings against debtor upon debtor's filing of bankruptcy proceeding); W. Va. R. App. P. 28(d) (recognizing automatic stay of pending action upon filing of bankruptcy proceeding); Syl. pt. 3, *Rebuild Am., Inc. v. Davis*, 235 W. Va. 245, 773 S.E.2d 11 (2015) ("Acts taken in violation of the automatic stay provisions of 11 U.S.C. § 362 (2010) are void *ab initio*.").

review. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). *See also* Syl. pt. 1, *Cordle v. Gen. Hugh Mercer Corp.*, 174 W. Va. 321, 325 S.E.2d 111 (1984) ("A determination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for a jury.").

## III.

## DISCUSSION

Mr. Jarrell asserts a single assignment of error on appeal: the circuit court erred by finding that West Virginia Code § 61-3-49b does not establish a substantial public policy to support his *Harless* wrongful discharge claim. Pursuant to our holding in *Harless*, an employee may assert a wrongful discharge claim against his employer, despite the customary at-will employment doctrine, if the employee proves that "the employer's motivation for the discharge is to contravene some substantial public policy princip[le]." Syl., in part, *id.*, 162 W. Va. 116, 246 S.E.2d 270. Mr. Jarrell contends that § 61-3-49b establishes substantial public policy by prohibiting the disruption of communications or public utility services by theft or intentional damage. He further avers that Frontier violated this substantial public policy when it terminated him after he reported to his supervisors his belief that other Frontier employees had intentionally damaged Frontier's communications equipment to obtain overtime work and pay for repairs required to fix such damage. Both Frontier and the circuit court rejected Mr. Jarrell's contentions. We

agree that West Virginia Code § 61-3-49b does not constitute a substantial public policy to support a *Harless* claim for wrongful discharge.

In his appeal, Mr. Jarrell asserts that, in enacting West Virginia Code § 61-3-49b, the Legislature intended to establish a substantial public policy that would support a claim for wrongful discharge under *Harless*.

> "[P]ublic policy" is that principle of law which holds that "no person can lawfully do that which has a tendency to be injurious to the public or against public good . . ." even though "no actual injury" may have resulted therefrom in a particular case "to the public." It is a question of law which the court must decide in light of the particular circumstances of each case.

*Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 135, 141, 506 S.E.2d 578, 584 (1998) (quoting *Cordle*, 174 W. Va. at 325, 325 S.E.2d at 114 (additional quotations and citation omitted)). With respect to a *Harless* public policy analysis, the issue is whether the employer has "contravene[d] some *substantial* public policy princip[le]." Syl., in part, *id.*, 162 W. Va. 116, 246 S.E.2d 270 (emphasis added).

Our use of the phrase "substantial public policy" in *Harless* "was designed to exclude claims that are based on insubstantial considerations" and further "implies that the policy principle will be clearly recognized simply because it is substantial." *Birthisel v. Tri-Cities Health Servs. Corp.*, 188 W. Va. 371, 377, 424 S.E.2d 606, 612 (1992). Therefore, "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different

9

interpretations." *Id.* "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person." Syl. pt. 3, *id.*

We have further held that, "[t]o identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. pt. 2, *id.* Yet, in doing so, we necessarily exercise judicial restraint.

> "The right of a court to declare what is or is not in accord with public policy does not extend to specific economic or social problems which are controversial in nature and capable of solution only as the result of a study of various factors and conditions. It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community so declaring."

*Tiernan*, 203 W. Va. at 141, 506 S.E.2d at 584 (quoting *Mamlin v. Genoe*, 17 A.2d 407, 409 (Pa. 1941)). Thus, "[o]rdinarily the courts will not decide on public policy grounds issues which are fairly debatable, but will instead leave them for legislative decision." Syl. pt. 3, *Yoho v. Triangle PWC, Inc.*, 175 W. Va. 556, 336 S.E.2d 204 (1985). We have additionally admonished that "courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject." *Tiernan*, 203 W. Va. at 141, 506 S.E.2d at 584 (quotation and citation omitted).

In accordance with these authorities, we have recognized the existence of substantial public policy when a terminated employee asserts a *Harless* claim for wrongful discharge. However, in those cases, we have found the existence of substantial public policy in "established precepts in our constitution,[11] legislative enactments,[12] . . . and

---

[11] For substantial public policy recognized by our constitution, we have held that

> [a]n at-will or otherwise employed private sector employee may sustain, on proper proof, a cause of action for wrongful discharge based upon a violation of public policy emanating from a specific provision of the state constitution. Determining whether a state constitutional provision may be applied to a private sector employer must be done on a case-by-case basis, i.e., through selective incorporation and application.

Syl. pt. 3, *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 135, 506 S.E.2d 578 (1998). Despite this recognition, in *Tiernan*, we rejected the employee's Free Speech based constitutional argument and found that, under the circumstances of that case, no provision of our constitution provided substantial public policy to support her wrongful termination claim. *See* Syl. pt. 4, *id.* ("The Free Speech Clause of the state constitution is not applicable to a private sector employer. In the absence of a statute expressly imposing public policy emanating from the state constitutional Free Speech Clause upon private sector employers, an employee does not have a cause of action against a private sector employer who terminates the employee because of the exercise of the employee's state constitutional right of free speech.").

[12] With respect to legislative-based substantial public policy, in *Frohnapfel v. ArcelorMittal USA LLC*, 235 W. Va. 165, 772 S.E.2d 350 (2015), we found the existence of substantial public policy to support a deviation from the at-will employment doctrine because the governing statute included an express legislative declaration of substantial public policy in the West Virginia Water Pollution Control Act. *See* W. Va. Code § 22-11-2(a) ("declar[ing] . . . the public policy of the State of West Virginia"). *Accord* W. Va. Code § 22-11-2(b) (also recognizing "the public policy of the State of West Virginia"). *See also* Syl. pt. 5, *Frohnapfel*, 235 W. Va. 165, 772 S.E.2d 350 ("An employee who alleges he or she was discharged for reporting violations of a permit issued under authority of the West Virginia Water Pollution Control Act, W. Va. Code §§ 22-11-1 to -30 (2014), and making complaints to his/her employer about those permit violations, has established the predicate substantial public policy required to *prima facie* prove that the

judicial opinions.[13]" Syl. pt. 2, in part, *Birthisel*, 188 W. Va. 371, 424 S.E.2d 606. In cases involving statutes criminalizing individual behavior like the one at issue in this case, though, we have not found a substantial public policy under *Harless* where the aggrieved employee reports alleged criminal activity by a coworker and the alleged misconduct does not impact the public at large.[14]

_____

employer's motivation for the discharge was the contravention of public policy. *See Harless v. First Nat'l Bank*, 162 W. Va. 116, 246 S.E.2d 270 (1978).").

[13] We have found substantial public policy provided by our prior judicial opinions where an individual's right to self-defense was mentioned in our constitution but reference to our common law was necessary to clarify the parameters of this right. *See* Syl. pt. 8, *Feliciano v. 7-Eleven, Inc.*, 210 W. Va. 740, 559 S.E.2d 713 (2001) ("When an at will employee has been discharged from his/her employment based upon his/her exercise of self-defense in response to lethal imminent danger, such right of self-defense constitutes a substantial public policy exception to the at will employment doctrine and will sustain a cause of action for wrongful discharge.").

We also have held that the judicially recognized right to privacy constitutes a substantial public policy to permit employees to challenge their termination based on their refusal to submit to polygraph testing. *See also* Syl. pt. 3, *Cordle v. Gen. Hugh Mercer Corp.*, 174 W. Va. 321, 325 S.E.2d 111 (1984) ("It is contrary to the public policy of West Virginia for an employer to require or request that an employee submit to a polygraph test or similar test as a condition of employment, and although the rights of employees under that public policy are not absolute, in that under certain circumstances, such as those contemplated by *W. Va. Code*, 21-5-5b [1983], such a polygraph test or similar test may be permitted, the public policy against such testing is grounded upon the recognition in this State of an individual's interest in privacy.").

[14] *Cf. Harless*, 162 W. Va. at 125, 246 S.E.2d at 275-76 (finding existence of substantial public policy where terminated employee bank manager alleged bank employer had overcharged bank customers on prepayments of their installment loans in violation of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 et seq., because "the Act . . . represents a comprehensive attempt on the part of the Legislature to extend protection to the consumers and persons who obtain credit in this State and who obviously constitute the vast majority of our adult citizens" (footnote omitted)).

For example, in *Swears v. R.M. Roach & Sons, Inc.*, 225 W. Va. 699, 696 S.E.2d 1 (2010) (per curiam), we declined to find that an employer had violated substantial public policy by terminating an employee, who had been the employer's controller and responsible for reviewing the employer's finances, after he reported suspicions of financial wrongdoing by one of the employer's owners. *Id.* We explained that, with respect to the criminal statutes the employee relied upon to support his wrongful discharge claim, "neither [the larceny, W. Va. Code § 61-3-13, nor the embezzlement, W. Va. Code § 61-3-20,] criminal statute expresses a public policy component such that the statutes may form the basis for a possible violation of a substantial public policy to support a claim for wrongful discharge." *Id.* at 705, 696 S.E.2d at 7 (footnote omitted).

Similarly, *Blanda v. Martin & Seibert, L.C.*, 242 W. Va. 552, 836 S.E.2d 519 (2019), involved a discharged accounts receivable clerk who voiced concerns over perceived billing irregularities. *Id.* The employer terminated her after she consulted a former Assistant United States Attorney for advice and emailed billable hour data to herself to preserve evidence of the employer's alleged wrongdoing. *Id.* at 555, 836 S.E.2d at 522. In her wrongful discharge claim, the employee argued that the employer's practices violated West Virginia Code § 61-3-24, which prohibits obtaining money by false pretenses, and that her firing after reporting such concerns violated the substantial public policy recognized by this criminal statute. *Id.* We disagreed, holding that

West Virginia Code § 61-3-24 (2014) does not constitute a substantial public policy under *Harless v. First*

13

*National Bank*, 162 W. Va. 116, 246 S.E.2d 270 (1978), and its progeny, to protect an employee of a non-public employer who reported suspected criminal conduct to the appropriate authority and claims to have been retaliated against as a result.

Syl. pt. 5, *Blanda*, 242 W. Va. 552, 836 S.E.2d 519. We explained this holding by observing that

> [t]he substantial public policy exception holds potential for abuse by disgruntled employees, and the potential for a legitimately terminated employee to come up with some reason for her termination based on the substantial [public] policy exception has long been recognized. This kind of deception is to be expected with an exception that is so broadly defined. Balancing the countervailing policy interests at issue here, we decline to further expand our common law substantial public policy exception in this instance.

*Id.* at 562, 836 S.E.2d at 529 (footnotes and quotations omitted).


Here, Mr. Jarrell seeks a declaration by this Court that West Virginia Code § 61-3-49b constitutes a legislative recognition of substantial public policy sufficient to support his wrongful discharge claim. For the reasons we declined to find the existence of substantial public policy based on the criminal statutes at issue in *Swears* and *Blanda*, we likewise find that § 61-3-49b does not set forth a substantial public policy under *Harless*. We have never held that a statute recognizing a property crime establishes a substantial public policy to support a *Harless* wrongful discharge claim, and we decline to depart from our well-settled precedent in this case.

14

First and foremost, the Legislature has not included an express statement of public policy in any of these statutes, which all concern crimes against property, and ostensibly the specific owners of such property, not the public at large. In this regard, we have specifically counseled in our wrongful discharge cases that "legislation [that] is designed to protect a narrow class of citizens . . . rather than a broad societal interest. . . . is not imbued with . . . substantial public policy[.]" *Shell v. Metro. Life Ins. Co.*, 181 W. Va. 16, 24, 380 S.E.2d 183, 191 (1989). *See generally* Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.").

Moreover, while West Virginia Code § 61-3-49b criminalizes the disruption of communications or public utility services through an individual's conduct that causes "a disruption of communication services or public utility services to ten or more households or subscribers," a violation of this statute may also be committed through other conduct. *See* W. Va. Code § 61-3-49b(a)(1). The elements of this crime are set forth in the alternative, meaning a criminal disruption of communications or public utility services can be established by proving either the ten or more household service disruption described above *or* by proving that the criminal conduct causes "a loss in the value of the property in an amount of one thousand dollars or more[.]" *See* W. Va. Code § 61-3-49b(a)(2). *See also State v. Taylor*, 176 W. Va. 671, 675, 346 S.E.2d 822, 825-26 (1986) ("We have customarily stated that where the disjunctive 'or' is used, it ordinarily connotes an alternative between the two clauses it connects." (quotations and citations omitted));

*Carper v. Kanawha Banking & Tr. Co.*, 157 W. Va. 477, 517, 207 S.E.2d 897, 921 (1974) ("Recognizing the obvious, the normal use of the disjunctive 'or' in a statute connotes an alternative or option to select."). Thus, by its express language, § 61-3-49b is a property crime, and the statute may be violated without impacting anyone other than the owner of the property. *See generally* Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Finally, given the alternative methods of proving an individual has committed the crime of disrupting communications or public utility services, the statute is not sufficiently clear to place an employer on notice that § 61-3-49b embodies a substantial public policy that would defeat the operation of the at-will employment doctrine. *See Feliciano v. 7-Eleven, Inc.*, 210 W. Va. 740, 745, 559 S.E.2d 713, 718 (2001) ("[T]o be substantial, a public policy must not just be recognizable as such but must be so widely regarded as to be evident to employers and employees alike."); *Birthisel*, 188 W. Va. at 377, 424 S.E.2d at 612 ("An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations."). We have cautioned that, when identifying a substantial public policy for *Harless* purposes, "'[i]t is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the

16

community so declaring.'" *Tiernan*, 203 W. Va. at 141, 506 S.E.2d at 584 (quoting *Mamlin*, 17 A.2d at 409). Therefore, absent a definitive recognition of substantial public policy by the Legislature, we do not find that § 61-3-49b is sufficiently clear to constitute an expression of substantial public policy. Accordingly, we hold that West Virginia Code § 61-3-49b (eff. 2012) does not establish a substantial public policy exception to the at-will employment doctrine pursuant to *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978).

Applying this holding to the facts before us, we find that the circuit court did not err by granting Frontier's motion to dismiss Mr. Jarrell's complaint asserting a single cause of action for wrongful discharge based upon Frontier's purported violation of substantial public policy. Mr. Jarrell based his entire claim for relief against Frontier on his assertion that West Virginia Code § 61-3-49b establishes a substantial public policy and that, when he reported his belief that other Frontier employees were intentionally sabotaging Frontier's communications equipment in violation of this statute, Frontier terminated his employment. A motion to dismiss tests the sufficiency of the complaint and determines whether the complaint states a claim upon which relief may be granted. *See* W. Va. R. Civ. P. 12(b)(6) (recognizing that defense of "failure to state a claim upon which relief can be granted" may be raised by motion); *Cantley v. Lincoln Cnty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007) (per curiam) ("The purpose of a motion under Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* is to test the sufficiency of the complaint."). Based on our determination that § 61-3-49b does not recognize a substantial

17

public policy sufficient to support a *Harless* wrongful discharge claim, as well as Mr. Jarrell's failure to plead any alternative grounds for relief, we find no error in the circuit court's determination that Mr. Jarrell's complaint failed to state a cognizable claim for relief. *See Murphy v. Smallridge*, 196 W. Va. 35, 36, 468 S.E.2d 167, 168 (1996) ("Dismissal for failure to state a claim is proper where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (quotations and citations omitted)). Therefore, we affirm the circuit court's order granting Frontier's motion to dismiss Mr. Jarrell's complaint.

## IV.

## CONCLUSION

Based upon the allegations in Mr. Jarrell's complaint, we conclude that the circuit court did not err by ruling that he had failed to state a claim for wrongful discharge upon which relief could be granted. Therefore, we affirm the circuit court's December 23, 2019 order granting Frontier's motion to dismiss Mr. Jarrell's complaint.

Affirmed.